UNITED STATES of America, for the Use and Benefit of CIRCLE–L–ELECTRIC COMPANY, a partnership, Plaintiff,

v.

HYDE CONSTRUCTION COMPANY, Inc., a corporation, United States Fidelity and Guaranty Company, a corporation, National Surety Corporation, a corporation, and the Aetna Casualty and Surety Company, a corporation, Defendants.

Civ. No. 5994.

United States District Court
N. D. Oklahoma.

June 22, 1966.

Ray H. Wilburn, Frank Robert Hickman, Tulsa, Okl., for plaintiff.

Sanders, McElroy & Whitten, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is a case brought by the use plaintiff under the Miller Act, Title 40 U.S.C., Sections 270a and 270b. The defendant Hyde Construction Company was the general contractor for the Keystone Dam Project. The surety company defendants provided the payment and performance bond for the general contractor pursuant to the Miller Act. The use plaintiff was a subcontractor under Hyde Construction Company doing the elec-

trical work required by Item 38 of the Specifications.

The plaintiff claims that it is due from the defendants the sum of $46,047.37 for material supplied and labor performed by it pursuant to said subcontract during the period March 27, 1960 through July 19, 1963. The defendants deny the claim of the plaintiff but do admit that there is still unpaid to plaintiff the sum of $2,451.64. However the defendants assert that the plaintiff is barred from recovering this amount since it did not file its complaint herein within one year after the date the last material and labor was supplied and performed pursuant to the limitations provision of the Miller Act. 40 U.S.C., Section 270b. The defendants admit the jurisdiction of this Court and also deny that the plaintiff is entitled to legal fees or interest.

In addition to the balance due on the subcontract of $2,451.64 and a claim for "Interest and Expenses" in the amount of $4,449.60 upon which no proof was offered and which is, therefore, deemed to have been abandoned, it appears from the evidence presented that plaintiff claims it is entitled to a recovery against the defendants on the basis of six separate and distinct items as follows:

*Item 1.* Plaintiff claims it is due the sum of $447.87 by reason of furnishing Unistrut Supporting Devices for the Project which were not required by the Specifications.

*Item 2.* Plaintiff seeks to recover the sum of $812.33 as the cost of certain motor controllers furnished to the Project by the plaintiff which the plaintiff claims it was not required to do under the Specifications.

*Item 3.* Plaintiff seeks recovery for the sum of $400.00 for work accomplished in grounding certain of its electrical installations which the plaintiff alleges was in excess of the requirements of the Specifications.

*Item 4.* Plaintiff seeks the recovery of $29,651.49 representing the difference in providing and installing a heavier duct in lieu of the duct prescribed by the Specifications.

*Item 5.* Plaintiff seeks recovery in the amount of $1514.21 which plaintiff claims it expended for labor in reopening a ditch because the defendant Hyde Construction Company had filled up the ditch after it had promised plaintiff it would not do without notification to the plaintiff since the plaintiff wished to lay a conduit line in this ditch.

*Item 6.* Plaintiff seeks recovery in the amount of $6,320.28 as its cost in the preparation of lift drawings which plaintiff claims were required of it by the defendant Hyde Construction Company notwithstanding the fact that such lift drawings were not required by the Specifications.

The defendants deny that the plaintiff is entitled to recover against them in any amount including the above mentioned six items for various specific reasons such as that the work involved was work which the plaintiff was required to do and undertook to do as its responsibility under its subcontract on the Project; that no change orders were obtained by plaintiff for any such items as required by the Specifications governing the Project; that the plaintiff, in fact, requested permission to be allowed to substitute one of the items claimed in lieu of that provided by the Specifications; that the defendants did not require the lift drawings but that the same were prepared at the instance of the plaintiff and that with reference to the ditch, if the defendant Hyde Construction Company did back-fill the ditch in violation of its understanding with the plaintiff that such is not an item that is recoverable under the provisions of the Miller Act inasmuch as this alleged default does not involve materials supplied or labor performed on the Project.

With reference to Item 1 above the Court finds that the plaintiff, by letter dated August 7, 1962, to the Hyde Construction Company, requested permission to use the Unistrut Supporting Device in lieu of "U" bolts as shown by

the Specifications.[1] The evidence discloses that the "U" bolts required by the Specifications were never, in fact, installed. No change order was effected. The requested substitution was approved by the Corps of Engineers at the instance of the plaintiff. Thus, at the request of the plaintiff a substitute was authorized in lieu of an installation required by the Specifications and plaintiff is not entitled to recover the cost of this substituted installation which it requested. The plantiff testified that Hyde wanted the substitute and agreed to pay for the Unistrut. Hyde denies this. The letter written by the plaintiff does not support its position. No other document is submitted. This factual issue is resolved against the plaintiff as plaintiff has not sustained its burden to prove this issue by a preponderance of the evidence.

■ With reference to Item 2 above the plaintiff and the defendant Hyde Construction Company were engaged in a dispute as to who would be responsible for providing the motor controllers. Section 10-16b(2) of the Specifications provides that motor controllers shall conform to the applicable requirements of the section on electrical work. This is Item 38 which was the responsibility of the plaintiff. Sections 10-19a(1) and (2) of the Specifications provide that the payment for motor controllers and connections between such controllers as well as payment for all other electric wiring, etc., shall be included in the contract price for the item, "Electrical System". This is Item 38, the responsibility of the plaintiff. The plaintiff makes reference to Section 12-47b(2) of the Specifications as not requiring it to pay for the controllers. This section provides that the sluice gates will be paid for by another and refers to 10-19, supra, regarding appurtenant equipment to the electric motor which section as shown above requires payment by the plaintiff. The Court has little difficulty in deciding that the Specifications clearly provide, as noted above, that the plaintiff is responsible for providing and paying for the motor controllers under Item 38.

■ With reference to Item 3 regarding grounding, Section 12-10 of the Spec-

[1]
"Hyde Construction Company
P. O. Box 846
Sand Springs, Oklahoma

Re: Keystone Dam
Contract #DA-34-066-CIVENG-60-864
Catwalk Conduit Supports

Attn: Mr. L. P. Sowles

Gentlemen:

Enclosed please find 6 copies of submittal data for Unistrut Supporting Devices. We request permission to use these devices in lieu of "U" Bolts as shown on Contract Drawing C107-724.1 for supporting electrical conduit in the catwalk area.

We would greatly appreciate your forwarding this to the proper parties for their consideration and approval as soon as possible.

Thanking you, we are

Very truly yours,

CIRCLE L ELECTRIC COMPANY

/s/ Ray Shamas
Ray Shamas,
        Estimator

RS/mk"

ifications provides that the plaintiff shall ground all of its work where there is any possibility of a dangerous voltage being established and any grounding done would have been done in compliance with this general responsibility. Again there was no change order. The Court decides this issue against the plaintiff for a failure on the part of the plaintiff to establish by a preponderance of the evidence that it, in fact, made specific groundings of the cost claimed at the request of Hyde and which were not necessary under the language of said Section 12–10.

■ With reference to Item 4 the Specifications called for the use of a commercial product known as Korduct in the various lifts built to create the Dam. The plaintiff undertook to use this item and in doing so it became crushed by the weight of the concrete and their attempts to overcome this result by various means met with failure. Whereupon the plaintiff changed to a different and heavier product called Orangeburg with the plaintiff now calling on the defendants for the sum of $29,651.49 representing the added cost resulting from this change. There appears to be no change order or anything in writing between the parties agreeing to this change. In computing the amount claimed on this item by plaintiff, as above indicated, it is noted that the price differential brought about by changing from Korduct to the other heavier item called Orangeburg only amounted to $396.81, with the principal item in this claim being represented by labor costs in supporting the substituted item. Under the evidence the Court finds that the plaintiff is not entitled to recover from the defendants for this item inasmuch as they did not authorize the change and the original difficulty and resulting efforts and expense of the plaintiff are merely a part and risk of their subcontract and required performance thereunder. It appears from the weight of the evidence that this change in material and procedure was done by and at the instance of the plaintiff and not by or at the instance of the defendants. It is

the evidence of the plaintiff that Hyde would not wait when the difficulty was encountered with the Korduct and did not want to go to the Corps of Engineers with the problem. Also, that plaintiff told Hyde that it expected money from Hyde for the difference. It is the evidence of Hyde that this whole problem belonged to the plaintiff and that the plaintiff alone made the change to the heavier product. Further that the labor costs in connection with the duct installation would have been present regardless of the use of Korduct or Orangeburg. It appears logical to the Court that this is correct and, in fact, labor costs could have been more with the use of the lighter duct prescribed by the Specifications. Hyde did not specify the Korduct. The labor costs regarding the duct installation was the responsibility of the plaintiff under its subcontract for Item 38. This issue is resolved by the Court in favor of the defendants.

■ With reference to Item 5 regarding the ditch, the defendant Hyde Construction Company admits that it had an understanding with plaintiff that it would not fill up this ditch without letting the plaintiff know and that through lack of coordination this understanding was not honored. The ditch was dug by the defendant Hyde Construction Company. The plaintiff reopened the ditch at a cost of $1514.21. The Specifications and contract papers were silent about this ditch. If plaintiff was required to lay a conduit line, as apparently it was, this was its responsibility whether in a ditch or not. Such being the case and under these circumstances the plaintiff would not be entitled to recover herein from the defendants for its expenditure made in reopening the ditch by reason of this breach of accommodation on the part of the general contractor. The plaintiff only did what it was required to do under its subcontract. The defendant Hyde did not order the reopening of the ditch or agree to pay the cost of reopening. Had Hyde not dug the ditch in the first place and the ditch was necessary the plaintiff

would have had to dig the ditch itself at its expense under its subcontract. This cannot be deemed an extra. This matter involves the breach of an accommodation agreement between plaintiff and Hyde and which was without consideration between the parties. It is not a matter which under these circumstances is recoverable under the provisions of the Miller Act.

■ With reference to Item 6, a claim in the amount of $6,320.28 representing the cost to the plaintiff for preparing certain lift drawings, the evidence is in conflict as to who required these drawings. The parties do seem to be in agreement that these lift drawings were not required by the Specifications. The plaintiff's evidence was to the effect that they were required of it by the defendant Hyde Construction Company. Hyde Construction Company contended that said lift drawings were prepared solely at the instance of the plaintiff. From correspondence placed in evidence it appears that a letter was written by the plaintiff to the defendant Hyde informing Hyde that the plaintiff was preparing these lift drawings on information from Hyde that they were required by the Corps of Engineers. In this letter the plaintiff pointed out to Hyde that these drawings were not required by the contract papers. Next is a letter from the defendant Hyde to the Corps of Engineers sending the above letter and two invoices attached in which letter the defendant Hyde requested the Corps of Engineers to analyze the contents of the plaintiff's letter and advise regarding the opinion of the Corps of Engineers. The Corps of Engineers answered this letter by saying that the defendant Hyde had not been requested by the Corps of Engineers to submit these lift drawings but that the Corps of Engineers had agreed to check any lift drawings if Hyde desired them to do so. The Corps of Engineers further advised that the Government was not responsible for the payment of any such lift drawings and that the defendant Hyde was instructed to discontinue the preparation of the same if they consid-

ered that they were being prepared at Government direction or cost. No other correspondence has been furnished the Court regarding this item other than plaintiff's invoices to Hyde therefor. It is, therefore, the finding and conclusion of the Court in the light of the evidence presented on this point that the defendant Hyde Construction Company did require, order and direct the plaintiff to prepare these lift drawings. Further, that they were not required by the Specifications or contract papers and notwithstanding such fact and advice of such fact, the lift drawings were prepared at the direction and request of the defendant Hyde Construction Company. By specifically ordering or directing the preparation of these drawings which were not required by the Specifications or contract papers and not directing a discontinuance following the letter from the Corps of Engineers the defendants waived any change order requirements. 1 A.L.R.3d 1273. The plaintiff should, therefore, prevail against the defendants on this item.

Inasmuch as the Court finds and concludes that plaintiff has met its burden of proof as to one of the six items above mentioned and since the defendant has admitted that the stipulated contract amount has not been fully paid and the sum of $2,451.64 is unpaid, the Court will consider whether the plaintiff should have judgment against the defendants for these amounts in the face of the claim of the defendants that the same are barred by the failure of plaintiff to bring this suit within the required one year period after the date the last material was supplied or labor was performed on this Project by the plaintiff. It should, of course, be observed that if this defense is good as to the admitted unpaid balance of $2,451.64, and the lift drawings that it likewise would be good as to all of the other five claims made by the plaintiff and denied herein for the reasons above set out. However, in order to assure plaintiff of careful consideration by the Court as to each item and to afford the appellate court with

the findings and conclusions of the Court as to each of these items in the event of an appeal, the Court has seen fit to make factual findings and legal conclusions regarding all of the controversies involved herein and in addition, to rule on the matter of the limitations involved herein under the provisions of the Miller Act.

In considering the limitations defense certain dates are pertinent. The last payroll submitted by the plaintiff to the defendants was on June 28, 1963, for the week ending June 25, 1963. All payrolls were required to be submitted to Hyde to assure compliance with the minimum wage law. The Project was inspected and accepted by the Corps of Engineers on June 28, 1963. The defendant Hyde furnished power to the Project until July 2, 1963, at which time Public Service Company disconnected and rendered its final bill. Suit was filed herein on July 16, 1964. The plaintiff contends that Central Electric Engineering and Contracting Company performed 2 or 3 hours of work for the plaintiff on the Project on July 19, 1963. Thus, did the limitations period start to run on June 25, 1963, as claimed by the defendants, or on July 19, 1963, as claimed by the plaintiff? If the earlier date is correct plaintiff's suit was instituted too late. If the plaintiff's date of July 19, 1963, is correct, then its suit was instituted in time. No work by plaintiff was shown to have been performed between June 25, and July 19, 1963.

The defendants raise two questions regarding the one year provision, first, whether or not the plaintiff performed any work whatsoever on July 19, 1963, and, second, if they actually performed work on that date did it constitute a furnishing of labor and material under the limitations provision of the Miller Act, it being the position of the defendants that it did not inasmuch as it was repair or correctional work.

The Miller Act, Title 40, U.S.C., Section 270b provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, *but no such suit shall be commenced after the expiration of one year after the date on which the last of the labor was performed or material was supplied by him.* The United States shall not be liable for the payment of any costs or expenses of any such suit." (Italics supplied.)

On the first issue the evidence is in conflict. The plaintiff produced evidence that it had workers there on July 19, 1963. The defendants supplied records placing them at the DX Refinery on another job on said date. The Court adopts the evidence of the plaintiff and resolves this controversy in its favor finding that electrical workers for the plaintiff worked on a pole top switch at the reservoir on July 19, 1963.

As to the second question the nature of the work performed on July 19, 1963, becomes important.

The case of United States for Use and Benefit of Austin v. Western Electric, 9 Cir., 337 F.2d 568, states that the test to be applied is whether the work performed and material supplied was a part of the original contract or for the purpose of correcting defects or making repairs following an inspection of the Project. The work extended the time to bring suit if the former but not if the latter.

The case of United States for the Use of General Electric Co. v. Gunnar I. Johnson & Son, Inc., 8 Cir., 310 F.2d 899, held that where installed equipment was defective and had to be shipped back to the manufacturer to correct defects and then reinstalled that the limitations period was extended and did not commence until the defective equipment was reshipped and installed after the defects were corrected.

The case of United States for the use of McGregor Architectural Iron Co., Inc. v. Merritt-Chapman & Scott Corp. et al.,

(D.C.Pa.1960), 185 F.Supp. 381, held that the limitations period was not extended by the correction of a defect. In this case it appears that after the contract was completed the subcontractor corrected some errors in the work performed by supplying some missing bolts and closing some holes in some posts which had been overlooked. The Court held that this type of effort would not extend the limitations period and denied recovery in a suit brought within a year after doing such correctional work.

Under the evidence in this case and primarily that supplied by the plaintiff in the person of Mr. Guy B. Leavitt who was the electrical contractor employed by the plaintiff to do some of the electrical work on the Project it appears that on June 25, 1963, the pole top switch involved was installed or worked on but inasmuch as there was some question as to whether or not it had been correctly installed, the installer wrote to the manufacturer for certain instructions as to how to properly install the switch. The manufacturer supplied this information by letter and the same was placed in evidence. It then appears that on July 19, 1963, the electrician employed by the plaintiff went to the pole top switch, turned the switch plate in the switch 180 degrees or opposite from the position that it was in; that the pole top switch was not installed or replaced on that date nor was a switch handle installed then inasmuch as the handle had been previously installed; that as originally installed the switch was operating backwards and that the work on July 19, 1963, was to correct this installation and in doing so the electrical power was not interrupted. It further appears that nothing new was installed on July 19, 1963, with the exception of some few bolts connected with the reversal of the switch plate as above mentioned.

It therefore appears that the work performed on July 19, 1963, was correctional or remedial type work as was involved in the *Merritt* case, supra. Nothing new

except a few bolts was furnished on July 19, 1963. Defective equipment was not shipped back to the manufacturer for correction and reshipped and installed as in United States v. Gunnar I. Johnson & Son, Inc., supra. Only instructions were sought of the manufacturer as to the proper manner of setting the switch plate. There was nothing wrong with or defective about the pole top switch itself. With only a few bolts furnished and the work on July 19, 1963, being to correct an improper setting of the switch plate as previously set on June 25, 1963, or prior thereto the limitation provision was not extended on July 19, 1963. The original contract was satisfied with the installation of a good non-defective pole top switch. The subsequent reversal of the switch plate therein was merely correctional or remedial work and not the furnishing of labor or material under the subcontract within the meaning of the limitation provisions of the Miller Act. Under the evidence before the Court and the law as announced in the *Merritt* case, supra, the Court finds that the work performed on July 19, 1963, did not serve to extend the limitations period or cause the same to not start running until such date. It is the finding of the Court that the limitations period started running against the plaintiff on June 25, 1963, and therefore plaintiff did not file this suit within one year from such date as required by the Miller Act. For this reason the plaintiff is not entitled to recover on any of the items sued on herein for the reason that all such items have been sought to be recovered in a suit filed after the limitations period in the Miller Act had run.

For the foregoing reasons the plaintiff is not entitled to recover herein and the Complaint is accordingly dismissed. Counsel for the defendants will prepare an appropriate judgment to this effect, submit the same to opposing counsel and then present the same to the Court for signing and filing herein.