774

The UNITED STATES of America for the Use of STATE ELECTRIC SUPPLY CO., Inc., a corp., Appellant,

v.

HESSELDEN CONSTRUCTION CO., a corp., and the Travelers Indemnity Co., a corp., National Union Fire Insurance Company of Pittsburgh, Pa., a corp., B. R. Fulkerson, Jimmie Duane Fulkerson, Individually, Grace V. Fulkerson, a/k/a Mrs. B. R. Fulkerson and Mrs. J. D. Fulkerson, Appellees.

HESSELDEN CONSTRUCTION CO., a corp., and the Travelers Indemnity Co., a corp., Appellants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a corp., B. R. Fulkerson, Jimmie Duane Fulkerson, Individually, Grace V. Fulkerson, a/k/a Mrs. B. R. Fulkerson and Mrs. J. D. Fulkerson, Appellees.

Nos. 9830, 9831.

United States Court of Appeals Tenth Circuit.

Dec. 30, 1968.

David F. Boyd, Jr., Albuquerque, N. M. (Scott H. Mabry, Albuquerque, N. M., with him on the brief), for appellant.

Edwin E. Piper, Jr., Albuquerque, N. M. (James H. Foley and Jack Smith, Albuquerque, N. M., with him on the brief), for appellees and cross appellants.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The plaintiff-appellant, State Electric Supply Company, initiated the action in the lower court, pursuant to Section 270b of the Miller Act,[1] against defendant-appellees, Hesselden Construction Company, and its surety, Travelers Indemnity Company, for the balance due on materials furnished to a subcontractor, Fulkerson Electric Company. The lower court entered a judgment denying appellant's claim.

The issues presented on appeal are whether the trial court erred in determining that the final materials supplied by the appellant materialman were not a part of the original contract, and whether a letter agreement wherein a prime contractor agrees to issue checks payable jointly to a subcontractor and his materialman creates a direct contractual relationship between the prime contractor and the materialman?

The United States, acting through the Bureau of Indian Affairs, entered into a contract with Hesselden Construction Company for the construction of a school. In accordance with the provisions of the Miller Act[2] Hesselden furnished a payment bond for the protection of materialmen with Travelers Indemnity Company as surety on the bond. Hesselden then subcontracted the electrical requirements of the project to Fulkerson Electric Company who in turn entered into a contract with State Electric Supply Company whereby State agreed to supply Fulkerson with material required on the project. As the work on the project was progressing, Hesselden noted that the materials necessary for the electrical work were not on the job site. Hesselden's concern over this situation prompted him to arrange a meeting with Fulkerson and State in order to come to an agreement concerning delivery dates of the needed material. At the meeting State indicated to Hesselden that there was a substantial sum of money then owing to State by Fulkerson. State then agreed to supply the needed materials and Hesselden agreed to make further payments of the receipts due Fulkerson by checks payable to Fulkerson and State jointly.

Following the conference, State prepared a letter dated April 30, 1964 directed to Hesselden and reciting the agreement reached at the conference. This letter was then approved by Hesselden and thereafter joint checks were issued. As the project was nearing completion, State issued an invoice on August 31, 1964 covering certain sound equipment with the notation "Final charges on clock and sound systems." On November 4, 1964 State issued another invoice covering "3 Gamewell P.C. IV Pedistal [sic] Comp." with the notation "plus freight charges on complete Gamewell." The facts then show that subsequently State supplied another pedestal on February 22, 1965, and additional sound equipment in the form of a receptacle and two transformers on March 5, 1965. Approximately two weeks later Fulkerson filed for bankruptcy without having paid State for the materials supplied. Accordingly, on March 23, 1965, State directed a notice and demand for payment to both appellees in conformance with § 270b of the Miller Act.

■ It is first argued by State that the written notice was given within ninety days of the date on which the

---

1. 40 U.S.C. §§ 270a–270c.

2. Id. § 270a.

last of the material was supplied as required by the Miller Act.[3] In regard to this it becomes important to determine the critical date from which the ninety-day period of limitation commences. The correct rule was set out by the Ninth Circuit when it provided that "[An] accurate statement of the test to be applied is whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.' "[4] The problem in the case at bar, then, is to determine whether the material supplied on February 22, 1965 and March 5, 1965 were materials supplied as a "part of the original contract," or whether they were for the purpose of "correcting defects, or making repairs."

■ In the trial court's memorandum opinion the following facts are found: (1) The last pedestal delivered on February 22, 1965 was a replacement for a damaged or lost piece of equipment which was included in the invoice of November 4, 1964. (2) The material supplied through the invoice of March 5, 1965, upon which the notice was based, was for corrective purposes. Unless clearly erroneous, we must accept these findings of the trial court.[5]

■ The evidence in the record shows that the original contract required three complete pedestals. The invoice of November 4, 1964 shows that three pedestals were furnished and were billed as complete. More than three months later another pedestal was delivered. State urges that the government would not accept the project as finished until after this last pedestal had been ordered and installed. It is true that the final acceptance did not come until February 25, 1965, but there is no evidence to the effect that acceptance was delayed because of any missing pedestal. In fact, final inspection was held September 9 and 10, 1964, and a government letter of February 26, 1965, which set forth certain deficiencies, makes no mention of any missing pedestal. Therefore the project must have been complete up to that point as to the pedestals. The evidence, therefore, substantiates the trial court's findings that the final pedestal was merely a replacement part for a lost or damaged piece included in the original invoice.

In regard to the sound equipment supplied through the invoice of March 5, 1965, i. e. the receptacle and two transformers, the record shows that the original sound system for the project had been designed by the Bureau of Indian Affairs and Sound Photo, Inc. a supplier for State, who installed the system according to those specifications. However, because the system failed to perform properly because of a "humming" noise, Sound Photo ordered and installed the three extra items which made the system perform properly. The receptacle and the two transformers were not required in the original plans and specifications. After installing the items Sound Photo billed State for the materials, and State in turn billed Fulkerson by its invoice of March 5, 1965. Fulkerson did not order the material from State, nor is it likely that he even knew about it. In view of these facts, the trial court was correct in its determination that the material invoiced by appellant on March 5, 1965 was for corrective purposes only and was not a part of the original contract. In the case of United States for Use and Benefit of Circle-L-Electric Co. v. Hyde Constr. Co.[6] the court held that the limitations period of the Miller Act cannot be extended by the correction of a defect. In citing

---

3. 40 U.S.C. § 270b.

4. United States for Use and Benefit of Austin v. Western Electric Co., 337 F. 2d 568, 572–573 (9th Cir. 1964); Accord, United States for Use and Benefit of Circle-L-Electric Co. v. Hyde Constr. Co., 255 F.Supp. 335 (N.D.Okl.1966).

5. Fanderlik-Locke Co. v. United States for Use of M. B. Morgan, Painting Contractor, 285 F.2d 939, 944 (10th Cir. 1960).

6. 255 F.Supp. 335 (N.D.Okla.1966).

this rule the *Hyde* case relied on the case of United States for Use of McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp.[7] where the court provided that:

> " * * * under the Miller Act a subcontractor may not recover on the bond unless he delivers materials or performs labor called for by the terms of the prime contract and also serves the notice within ninety days after the date of such delivery or performance. If plaintiff could extend the time for notice by correcting a defect, * * * the time for such notice might remain in chaos and depend upon the discovery of defects in construction over a year or more after completion * * * Plaintiff may not in this manner extend the time for the running of the ninety day period." [8]

Having determined that the invoices of February 22, and March 5, concerned materials used for repair or correction and not for the accomplishment of the original contract, their delivery could not serve to toll the running of the ninety day period. Accordingly, we hold that the notice of March 23 was not timely made and since proper notice is a condition precedent to an action by State on the bond,[9] the claim is dismissed.

The second issue involved in this appeal is whether the letter agreement of April 30, 1964 was sufficient to place State and Hesselden in a direct contractual relationship sufficient to obviate the necessity for written notice.

The trial court found that the letter agreement was nothing more than an agreement by Hesselden to make all future payments by checks payable to Fulkerson and appellant jointly, and an agreement by appellant to continue supplying material to Fulkerson. The court found that the agreement did not place the parties in such a direct contractual relationship as urged by appellant.

A similar situation was dealt with in United States for Use and Benefit of Henry Walke Co., v. Van de Riet.[10] In that case the subcontractor, Acme, was in weak financial condition. In order to get credit from its materialman, Walke, Acme executed an assignment of the proceeds of its contract with the prime contractor, Van de Riet, to Walke. The assignment was approved by Van de Riet. Subsequently, Acme became insolvent and defaulted under its subcontract. Walke brought an action against Van de Riet alleging that the assignment constituted a contract between Walke and Van de Riet whereby the latter agreed to pay Walke for the materials supplied to Acme. The court stated that:

> "It is clear that there was no contract, express or implied, whereby Van de Riet obligated itself to pay for such materials, and it is equally clear that there was no contractual relationship, express or implied, between Walke and Van de Riet, within the meaning of the Miller Act which would dispense with the required 90-day notice." [11]

In the case at bar a review of the record shows that at no time did Hesselden promise to pay State for the material he supplied. The letter agreement was merely a request by State that Hesselden make further payments by joint checks. In view of the foregoing, we hold that the trial court was correct in determining that no direct contractual relationship existed.

The judgment of the trial court is affirmed.

Affirmed.

7. 185 F.Supp. 381 (M.D.Pa.1960).

8. Id. at 383.

9. Frank Briscoe Co. v. United States for Use and Benefit of Western States Ma-

chinery Co., 396 F.2d 847, 849 (10th Cir. 1968).

10. 316 F.2d 912 (4th Cir. 1963).

11. Id. at 915.