UNITED STATES of America, for the Use of GREENWALD–SUPON, INC., Plaintiff,

v.

GRAMERCY CONTRACTORS, INC., and Fidelity & Deposit Company of Maryland, Defendants.

No. 74 Civ. 1377 (IBC).

United States District Court, S. D. New York.

May 31, 1977.

George H. Rosen, Rosen & Rosen, Monticello, N.Y., for plaintiff.

Norman Roth, New York City, for defendants.

## MEMORANDUM AND ORDER

IRVING BEN COOPER, District Judge.

Defendant Gramercy Contractors has moved for judgment dismissing the complaint pursuant to Rules 12 and 56, Federal Rules of Civil Procedure in that the complaint fails to state a claim upon which relief can be granted, and in that the statutory prerequisites of the Miller Act, Title 40 U.S.C. § 270b have not been satisfied. For the reasons set forth below, we find that plaintiff's complaint alleges a cause of action provable under the Miller Act and that proper notice pursuant to that statute was given.

This non-jury action was brought under the Miller Act for the recovery of $6,620.33 plus interest upon a payment bond for the balance due for services performed in connection with a construction and renovation job at the United States Military Academy, West Point, New York. On February 1, 1977, the parties appeared before us to commence the trial to the Court. It was agreed, however, that a trial would be unnecessary if we resolved that the statutory prerequisites of the Miller Act, i. e., notice and statute of limitations, were not satisfied. In that case, judgment would go to the defendant and the complaint would be dismissed. At that time the parties orally argued this issue; subsequently, written memoranda were submitted.

We have carefully analyzed the memoranda, as well as the relevant statutory and case authority on the Miller Act. Additionally, we have examined the various exhibits, which consist of correspondence among the parties and others; we conclude that plaintiff's position prevails. Accordingly, trial on the substance of plaintiff's claim will commence on a date to be fixed.

## I

The facts of this case are relatively simple. Defendant Gramercy Contractors entered into a contract with the United States Government on March 10, 1972 for the renovation of two buildings, Thayer and Bartlett Halls, on the West Point campus; contract price, $927,764. Pursuant to statute, defendant Gramercy secured two bonds from defendant Fidelity & Deposit Co. of Maryland (Fidelity)—a payment bond in the amount of $463,882 and a performance bond in the amount of $927,764. Gramercy then subcontracted the air-conditioning phase of the project to Bernard H. Steinke, a New Jersey corporation which was subsequently adjudicated a bankrupt and is not a party to this action.

Plaintiff, in effect a subcontractor of the subcontractor Steinke, provided labor and materials and now contends that it completely performed its contractual obligations, for which it was entitled to $65,-197.66; it was paid $58,224, leaving a net balance of $6,620.33, plus interest. During the course of the project, plaintiff encountered difficulty in collecting payment from Steinke. Accordingly, it secured a written statement from defendant Gramercy dated December 22, 1972, in which Gramercy agreed that final payment would not be made to Steinke without a release from plaintiff attesting to its receipt of full payment due from Steinke. Plaintiff maintains that it would not have continued on the job without the letter of assurance from defendant.

Thereafter, the entire West Point project was completed, and defendant collected the full contract price from the United States Government. However, defendant did not pay plaintiff the balance of $6,620.33 owed plaintiff by Steinke. Instead, plaintiff claims that defendant applied the monies as a set-off to obligations of Steinke on other jobs it had performed for defendant, which, plaintiff contends, contravenes the agreement embodied in the letter of December 22, 1972.

Defendant contends that the action was not commenced within the time limits prescribed by statute, and that in any event notice of claim was untimely. We now address ourselves to those issues.

The Miller Act, 40 U.S.C. § 270b provides in pertinent part:

(a) Every person who has furnished labor or material in the prosecution of the work . . . and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him . . . shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid . . .: Provided, however, that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor . . . shall have a right of action . . . upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor . . . for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished . . . or for whom the labor was done or performed. Such notice shall be served by . . . registered mail . . ..

(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing . . . but no suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed . . ..

We hold that no notice was required pursuant to section 270b since the contractor entered into a contractual relationship, express or implied, with plaintiff. See 40 U.S.C. § 270b; *Fidelity and Deposit Company of Maryland v. Harris*, 360 F.2d 402 (9th Cir. 1966); *U.S.A. ex rel. Hargis v. Maryland Casualty Co.*, 64 F.Supp. 522 (S.D.Cal. 1946); *U.S.A. ex rel. Noland Co. v. Wood*, 99 F.2d 80 (4th Cir. 1938). We hold further that, assuming *arguendo* that no contractu-

al relationship existed here, we would still be constrained to deny defendant's motion for judgment dismissing the complaint: the papers presently before us suggest that adequate notice of claim was given by plaintiff (pursuant to 270b) within the statutory period of 90 days from April 19, 1973, the date plaintiff claims work was last performed on the West Point project. Finally, on the issue of the statute of limitations, it is clear that if plaintiff can prove work was done at West Point by it on April 19, 1973, then the action was timely commenced since the parties agree that the suit was filed March 27, 1974.

## II

■ The Miller Act provides that only persons having "no contractual relationship express or implied with the contractor" must give notice of claim within ninety days of the last performed work. 40 U.S.C. § 270b(a). In requiring written notice of claim to the contractor within ninety days, "the statute seeks to protect the contractor by making it possible for him to withhold moneys due to the subcontractor, in order to satisfy claims asserted by third persons." *U.S.A. ex rel. Hargis v. Maryland Casualty Co., supra*; see also, *McWaters and Bartlett v. U.S.A. ex rel. Wilson*, 272 F.2d 291, 294 (10th Cir. 1959); *U.S.A. ex rel. Burack v. Sovereign Construction Co.*, 338 F.Supp. 657 (S.D.N.Y.1972).

This rule has a laudatory purpose because "once ninety days have elapsed without such notice, the contractor ought to be free to pay the subcontractor for his work without risk of liability to the supplier. A less strict interpretation of the notice proviso 'would lead either to double payments or to interminable delay in settlements between contractors and subcontractors to guard against these,—in either case with attendant prejudice to all concerned.'" *U.S.A. ex rel. Burack v. Sovereign Construction Co., supra*, citing *U.S.A. ex rel. J. A. Edwards v. Thompson Construction Corp.*, 273 F.2d 873, 875–76 (2d Cir. 1959), *cert. denied*, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960).

These factual concerns are not present here; throughout the construction period, defendant knew of plaintiff's work on the project pursuant to its contract with Steinke, defendant's subcontractor. Moreover, defendant knew in specific detail of plaintiff's problems in recovering payments for work already done for Steinke at West Point. Indeed, defendant agreed during this period not to release contract monies to Steinke until plaintiff had been paid. This agreement, while not an express contractual relationship between plaintiff and defendant must be viewed as creating an implied relationship whereby defendant specifically stated: "We agree that final payment will not be made to Steinke without a release from Greenwald-Supon attested [sic] to their receipt to full payment for monies due them under their contract and authorized extras, in connection with the above project." This letter agreement was signed by Mr. Irving Kusnitz, representative of defendant. In consideration for this express promise from defendant, plaintiff remained on the job at West Point and completed its contractual obligations with Steinke.

■ With respect to the Miller Act, it is well settled law that notice "is not needed when the contractor has himself entered into an agreement with the materialman of a subcontractor [i. e. plaintiff herein]." See generally, *U.S.A. ex rel. Hargis v. Maryland Casualty Co.,* supra; *U.S.A. ex rel. W. E. Foley v. United States Fidelity & Guaranty Co.,* 113 F.2d 888 (2d Cir. 1940); *U.S.A. ex rel. Noland Co. v. Wood,* 99 F.2d 80 (4th Cir. 1938). In *Noland v. Wood,* there was a written agreement by the contractor to pay a specified third party. In *Foley v. United States Fidelity & Guaranty,* there was a written guaranty by the contractor. And in *Hargis v. Maryland Casualty,* the court noted that defendant contractor did not need the protection of the notice provision of 270b because "the factual situation . . . discloses a direct contractual relationship between the use plaintiff and the contractor, and such acts on his part in inducing reliance by third persons, as spell liability . . . the contractor's conduct indicates

such complete knowledge of all the elements of the claim, as would have made a more formal notice an idle and useless act." *Id.* at 528. Among the significant facts in *Hargis,* the contractor had actual notice that the materialman was performing work, and after its completion the contractor was fully apprised of the materialmen's claim, stating specifically, and with substantial accuracy, the amount claimed. *Id.,* at 528. In all these cases the courts found an implied contract between the contractor and materialman sufficient in law to obviate the necessity of notice to the contractor pursuant to 270b.

■ The facts of the present case clearly indicate that the contractor and plaintiff were operating under, at the very least, an implied contractual relationship sufficient to negate the notice requirement as a protective device for the contractor. First, defendant was aware that plaintiff was performing work at West Point pursuant to a contract with subcontractor Steinke. This is evident from a series of letters between plaintiff and defendant, as well as correspondence between Steinke and defendant which concern plaintiff.

Moreover, defendant was specifically aware of the nature of the work plaintiff was doing. In a letter dated December 21, 1972 respecting Thayer and Bartlett Halls at West Point, plaintiff advised defendant:

> We have subcontracted the sheet metal ductwork on subject job from Bernard H. Steinke, Inc.—who in turn are subcontractors of yours (You have the General Contract). In addition to the original Contract work, Bernard H. Steinke, Inc. has authorized us in writing to perform work on this job which is in addition to our original subcontract.

Of primary importance is the fact that defendant explicitly agreed not to make final payment to Steinke without a release from plaintiff. This promise could not have been spelled out more clearly:

> We agree that final payment will not be made to . . . Steinke without a release from Greenwald-Supon attested to

their receipt to full payment for monies due them under their contract and authorized extras, in connection with the above project.

Protected by such assurances, plaintiff continued work on the West Point project. Within several months, however, defendant was again made aware of the problems which beset plaintiff collecting monies from Steinke. In a letter to Steinke dated July 6, 1973, defendant stated: "It is therefore evident that Greenwald-Supon has not received his full payment that is due and owing to him. . . ." From the context of further correspondence between defendant and Steinke, it is abundantly clear that defendant recognized its implied obligation to ensure that plaintiff was paid by Steinke. For example, defendant wrote Steinke on July 6, 1973:

> [Y]our subcontractor Greenwald-Supon has done his work, it has been accepted, it has been paid for, to you; we expect that you settle your accounts with your subcontractor as expeditiously as possible.

Further, defendant wrote to Steinke on July 18, 1973 enclosing a copy of correspondence regarding alleged non-payment to plaintiff and requesting an immediate reply "to avoid our withholding of any funds due you."

Finally, plaintiff fully and adequately apprised defendant in precise detail the nature and extent of the outstanding obligations owed it by Steinke. By letter dated November 20, 1973, plaintiff advised:

> Our records indicate that the total amount billed on this job for the contract sum and authorized extras is $65,197. At this writing, we have received from B.H. Steinke, Inc., a total of $58,224. This leaves a balance due us on our billing of $6,973 less the amount of $353.33 which we have indicated above that we would accept as backcharges.

Thus, it is crystal clear from all of the facts and circumstances that defendant knew it had a contractual obligation to plaintiff to ensure that it would be paid by Steinke before defendant released contract monies to Steinke. This is plainly an implied contract:

when the words 'implied contract' occur in a statute, the reference is to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding. *Hargis v. Maryland Casualty Co., supra*; see also, *Baltimore & Ohio Railroad v. United States*, 261 U.S. 592 [43 S.Ct. 425, 67 L.Ed. 816] (1923).

It is defendant's position that it "did not promise to make any payment to Greenwald-Supon but only undertook to delay the making of final payment to Steinke pending the receipt of advice that Steinke had paid its obligations to Greenwald-Supon." Defendant's Supplemental Memo. of Law, p. 3. Hence, defendant argues that "it is clear that there is no such direct contractual relationship between Greenwald-Supon and Gramercy as would make unnecessary compliance with the notice provisions of the Miller Act." Defendant urges the case of *U.S.A. ex rel. State Electric Supply v. Hesselden Construction Co.*, 404 F.2d 774 (10th Cir. 1968) to support its contention on this point. In *Hesselden*, by letter the contractor promised the subcontractor that it would make all payments by check payable jointly to the subcontractor and sub-subcontractor. In the instant case to the contrary we are presented with a course of conduct which is based upon a letter agreement between the contractor and the sub-subcontractor whereby the contractor agreed not to pay the subcontractor until the sub-subcontractor was paid in full. Defendant's acts throughout the relevant period were consistent with its express obligation to plaintiff to ensure that it was paid. Defendant should not be heard now to diminish its obligation to plaintiff, obviously the injured party.

Under the circumstances of this case, we find that a contractual relationship did exist between plaintiff and defendant; accordingly, plaintiff was not bound by the notice provisions of 270b. Requiring such notice would have been fruitless, since "the agreement between the parties, its contemporaneous interpretation by them, and their

actions with relation to it, make any additional notice unnecessary." *Hargis v. Maryland Casualty Co., supra.* For these reasons, we reject defendant's contention that notice was required under the Miller Act on the facts presented herein.

### III

Assuming *arguendo* that no contractual relationship express or implied existed between plaintiff and defendant to obviate the necessity of notice, we hold that adequate notice was given in timely fashion herein, provided plaintiff can sustain its proof that work was last performed on the West Point project on April 19, 1973.

Section 270b(a) provides that:

any person having a direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor . . . shall have a right of action . . . upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made . . . .

As noted above, the purpose of this notice proviso is to protect the contractor from claimants of whose existence he is unaware after a period of ninety days from completion of the work. See *U.S.A. v. Maryland Casualty, supra.* Similarly, this statute has been interpreted as affording protection to the claimant: "The statute provides a method by which those who supply subcontractors may protect themselves. The protection must be invoked within ninety days of the last delivery of goods. . . ." *U.S.A. ex rel. Light & Power Utilities Corp. v. Liles*, 440 F.2d 474 (5th Cir. 1971).

■ At the outset, a determination is required as to the date upon which the "last work" was performed pursuant to the original contract. The standard by which this date is determined (in order to begin the running of the ninety day notice period) is "whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting

defects, or making repairs following inspection of the project.'" *U.S.A. ex rel. Air Stream Products Co., Inc. v. Essential Construction Co.*, 363 F.Supp. 681 (S.D.N.Y. 1973); see also, *U.S.A. ex rel. State Electric Supply Co. v. Hesselden Construction Co.*, 404 F.2d 774 (10th Cir. 1968).

■ It is thus clear that the furnishing of labor for the purpose of correcting or repairing defects in work already done does not serve to toll the notice period of the Miller Act. See *U.S.A. ex rel. McGregor v. Merritt-Chapman & Scott Corp.*, 185 F.Supp. 381 (M.D.Pa.1960); *U.S.A. ex rel. Erie City Iron Works v. Fullerton Construction Co.*, 298 F.Supp. 1157 (D.C.S.C.1969). The rationale for this rule is clear:

Under the Miller Act a subcontractor may not recover on the bond unless he delivers materials or performs labor called for by the terms of the prime contract and also serves the notice within ninety days after the date of such delivery or performance. If plaintiff could extend the time for notice by correcting a defect . . . the time for such notice might remain in chaos and depend upon the discovery of defects in construction over a year or more after completion . . . . Plaintiff may not in this manner extend the time for the running of the ninety day period. *McGregor v. Merritt-Chapman, supra*, at 383.

Plaintiff claims that it last performed work on the West Point project in August 1973; if this is not accepted, plaintiff asserts it will prove work was performed on April 19, 1973. Defendant contends that plaintiff last performed work on February 26, 1973, and that the August 1973 work was merely corrective in nature; defendant asserts nothing with respect to the claimed work performance on April 19.

As to the work performed in August 1973 it appears from the exhibits before the Court that this work was indeed merely "corrective." Subcontractor Steinke wrote to plaintiff on August 16, 1973:

This is to direct you to *correct the discharge ductwork for the New Chemistry*

*Laboratory* located in Room 151. . . If this work is not in progress by August 21, 1973, we will proceed to make the corrections ourselves and backcharge your account. [emphasis added]

■ From this letter, it is evident that the work performed in late August 1973 "concerned . . . repair or correction and not . . . the accomplishment of the original contract . . . ." *State Electric Supply v. Hesselden, supra,* at 777. Accordingly, the performance of such corrective work does "not serve to toll the running of the ninety day period." *Id.;* see also, *Johnson Service Co. v. Transamerica Insurance Co.,* 485 F.2d 164 (5th Cir. 1973).

Plaintiff's fallback position is that it will offer proof at trial that it performed work on the original contract as late as April 19, 1973. See Pltf. Supple. Brief, p. 3. There is some evidence to support plaintiff's contention on this score. On April 17, 1973, plaintiff received a telegram from subcontractor Steinke: "unless uncompleted items are taken care of by April 19, 1973 we will be forced to hire outside contractors and will backcharge your account for same." This telegram clearly suggests that plaintiff was asked to perform work mandated by the original contract and not merely corrective in nature. Defendant has presented no affirmative proof to refute this.

■ If plaintiff is able to sufficiently establish that work on the original contract was performed on April 19, 1973, then notice would be mandated by section 270b on or before July 18, 1973, ninety days from April 19, 1973.[1] The facts presented herein indicate that plaintiff gave defendant notice of its claim against Steinke on several occasions before July 18, 1973.

On June 22, 1973, plaintiff wrote defendant concerning Steinke's non-payment. This is acknowledged by Steinke itself in a letter to defendant dated June 27, 1973. Indeed, defendant recognized that it had notice of plaintiff's claim when it wrote to Steinke on July 6, 1973, "It is therefore evident that Greenwald-Supon has not received his full payment that is due and owing to him . . . we expect that you settle your accounts with your subcontractor as expeditiously as possible." Further, on July 18, 1973, defendant wrote Steinke enclosing a copy of correspondence regarding alleged non-payment to plaintiff, and stating that "an immediate reply is essential to avoid our withholding of any funds due you."

■ Thus, it is quite clear that by July 18, 1973—the ninetieth day after April 19—defendant had adequate notice of plaintiff's claims against Steinke; indeed had taken affirmative steps to effectuate the satisfaction of the account. Although the precise words of section 270b require notice by registered mail, it has been held that the technical provisions of the Miller Act regarding notice do not bar recovery if in fact timely notice of some sort is given. See *U.S.A. ex rel. General Electric Co. v. H. I. Lewis Construction Co. et al.,* 375 F.2d 194, 201 (2d Cir. 1967). The provisions of the Miller Act should be liberally construed, so long as notice, however conveyed, "reach[es] the party sought to be held by the notice within the statutory time for its receipt." Id. at 200. Accordingly, we hold that notice by unregistered mail is sufficient if received in time. See *U.S.A. ex rel. Excavation Construction Inc. v. Glenn,* 388 F.Supp. 289 (D.C.Del.1975).

■ We find that if plaintiff sustains its proof that work was performed on April 19, 1973, then adequate notice under section 270b is proved by the correspondence referred to above. We note parenthetically that notice to co-defendant surety is not required by this statute. See e. g. *Korosh v. Otis Williams & Co.,* 30 F.Supp. 590 (D.C. Idaho 1939).

Hence, assuming *arguendo* that no express or implied contractual relationship existed between plaintiff and defendant

---

1. The timeliness of notice under the Miller Act is computed in accordance with Rule 6, Fed.R. Civ.P., which states that the first day is excluded and the last day included. See *U.S.A. ex rel. Engineering & Equipment Co. v. Wyatt,* 174 F.Supp. 260 (D.C.Fla.1959).

(herein we have concluded otherwise), plaintiff has raised an issue of fact, i. e. whether it last performed work on April 19, 1973. A trial on this issue, as well as on the issue of the substance of plaintiff's claim, is necessary.

### IV

■ Additionally, defendant asserts the statute of limitations in support of its motion to dismiss the complaint, claiming that plaintiff did not institute the action within the one year period as required by the Miller Act. The validity of this contention is clearly dependent on plaintiff's proof as to when it last performed work on the West Point project. It is agreed between the parties that the suit was filed on March 27, 1974 [see Agreed Statement of Facts, para. 18]. If plaintiff can sustain its proof that it last performed work on April 19, 1973, then clearly the action was commenced within the statutory time limits of the Miller Act; this is an issue of fact which can only be resolved at trial. Accordingly, defendant's motion to dismiss based upon the statute of limitations must be denied.

■ Finally, defendant urges that the claim asserted by plaintiff includes amounts not recoverable under the Miller Act. The disputed amounts are what defendant terms "extras." Whether these items were in fact additional to the original contract and thus unrecoverable under the statute presents questions of fact and law not capable of resolution by the instant motion. Cf. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975).

For the foregoing reasons, defendant's motion for judgment dismissing the complaint is denied in all respects. Trial will commence on a date to be fixed and limited to the following issues:

(1) The date on which work was last performed by plaintiff at the West Point project pursuant to the original contract between it and Steinke.

(2) The amount of the claim.

SO ORDERED.