**UNITED STATES of America For the Use of BILLOWS ELECTRIC SUPPLY COMPANY, INC.**

v.

**E. J. T. CONSTRUCTION CO., INC., National Fire Insurance Company of Hartford, American Casualty Company of Reading and B. D. Thomas Company.**

**Civ. A. Nos. 78–528, 78–4032 and 79–1024.**

United States District Court, E. D. Pennsylvania.

July 9, 1981.

Howard J. Creskoff, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., for plaintiff.

Charles I. Richman, Richman, Romisher, Cook & Phillips, Philadelphia, Pa., George F. Gardner, III, Morris, Nichols, Arsht & Tunnell, Dover, Del., for defendants E.J.T. Const. Co., Inc., American Cas. Co. of Reading and Nat. Fire Ins. Co. of Hartford.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

These actions, which arose under the Miller Act, 40 U.S.C.A. § 270a, *et seq.*, were tried together before the Court, sitting without a jury, on April 20 and April 21, 1981. The defendants E.J.T. Construction Company, Inc. (the General Contractor), National Fire Insurance Company of Hartford (National), and American Casualty Company of Reading (American) were represented by the same counsel. Prior to the commencement of trial, defendant B. D. Thomas Company (the Subcontractor) settled with the plaintiff Billows Electric Supply Company, Inc. (the Materialman) and the other defendants. The issues to be decided by the Court are whether the Materialman complied with the notice provisions of the Miller Act, 40 U.S.C.A. § 270b, and if so, whether the Materialman is entitled to recover the unpaid balance for any or all of the materials it supplied to the Subcontractor, together with service charges on the unpaid balance.

At trial the parties stipulated that on or about June 26, 1975, the United States of America, acting through the Department of the Navy, Naval Facilities Engineering Command (Navy), and the General Contractor entered into a written contract whereby the General Contractor agreed to furnish all of the labor and material and perform all work required for the construction of a project known as the aircraft maintenance hangar and parking apron at the Naval Air Station, Willow Grove, Pennsylvania. The original contract was for the sum of $6,087,-768.00. On or about June 26, 1975, the General Contractor as principal and National and American as sureties executed a payment bond and performance bond to the United States of America in reference to said project. These bonds were duly accepted by the United States of America, and upon acceptance the contract for the construction of the aircraft maintenance hangar and parking apron at Willow Grove, Pennsylvania was awarded to the General Contractor. All of the labor to be performed and materials to be furnished under this contract were to be supplied within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

The parties further stipulated that the General Contractor and the Subcontractor entered into a written agreement whereby the Subcontractor agreed to furnish certain supervision, equipment, labor and materials required for the installation of all electrical work and all associated accessories in accordance with the plans and specifications of the contract between the Navy and the General Contractor. The original contract between the General Contractor and the Subcontractor, dated August 29, 1975, was

for the sum of $600,500. The Navy, however, issued a total of approximately thirteen change orders to the General Contractor for certain additional work as the contract progressed, some of which involved the Subcontractor. The Materialman supplied material ordered by the Subcontractor for this subcontract, and has not been reimbursed for some of this material.

The Subcontractor testified that the electrical subcontract required him to supply certain kinds of electrical material for the job. The Subcontractor contacted the Materialman, a supplier of electrical equipment with whom he had previously done business, to obtain price quotations for the equipment and supplies needed for the job. The Materialman orally quoted prices for the electrical supplies and equipment and stated that these prices would not be increased for 90 days. The Subcontractor incorporated these prices into his bid and subsequently bought 70–75% of these materials from the Materialman within 90 days. The Subcontractor testified that the terms of payment for these materials was 2%/10, net 30 and a service charge of 1½% per month on any unpaid balance due for more than 60 days. The Subcontractor continued to buy material from the Materialman after the 90 day period had expired, and paid approximately the same price for the materials as was quoted to him by the Materialman. The Subcontractor testified that the last order he placed with the Materialman for material for the hangar job was delivered to the job site on or about November 21, 1978. The Materialman and the Subcontractor never entered into a written contract for any of the materials purchased, and testified that this practice was customary among electrical suppliers and electrical subcontractors.

The Subcontractor made prompt payments to the Materialman for materials he ordered until sometime in late 1976, when payments began to fall in arrears. Early in 1977, the General Contractor began to pay the Subcontractor for its work by issuing monthly checks on which the Subcontractor and the Materialman were joint payees. The Subcontractor would forward these checks to the Materialman after he had endorsed them. The Subcontractor testified that in November 1977, the Materialman informed him that he would not accept any further orders from him until the outstanding balance of approximately $60,-000.00 was paid.

The Materialman testified that in November 1977 he spoke directly to the General Contractor and advised him that he was not accepting any further orders for material from the Subcontractor until the balance on the Subcontractor's account was paid. Shortly thereafter, the Materialman received a check from the General Contractor in the amount of $29,528.78, to be applied to the balance due. The Materialman testified that he agreed to continue to send materials to the job site pursuant to an agreement with the General Contractor. The Materialman sent a letter to the General Contractor (Exhibit "P–2") confirming this agreement on December 1, 1977. This letter stated:

Confirming our phone conversation of today, 12–1–77, we discussed the letter dated 11–28–77.

The agreement made by yourself with me is that we get an initial payment of $29,-528.78 immediately. This has been received and a payment of $10,000 every 30 days thereafter against the old balance on the B.D. Thomas account. The account now shows a balance of $30,-673.85. All material shipped from here will be paid for within 30 days after delivery.

If there is anything I can do to help, please contact me immediately. I am pushing now for a better delivery on the D.C. Rectifiers.

The Materialman testified that he resumed shipments to the job site but received no further payments from the General Contractor. The Materialman introduced into evidence 141 invoices (Exhibits "Pl–1 through 1–141") for electrical supplies sent to the job site for which he claimed that payment had not been received. The earliest shipment date on these

invoices is July 21, 1977, and the latest shipment date is November 21, 1978. The Materialman did not ship any material to the job site between August 1978 and November 21, 1978. The Materialman testified that the total balance of these invoices is $50,634.58, and that a service charge of 1½% per month ($38,583.38) has accrued on this unpaid balance.

On December 8, 1977 and January 17, 1979 the Materialman sent letters to the General Contractor, National, American and the Subcontractor demanding payment of the outstanding balance. The Materialman filed complaints against these defendants on February 16, 1978, December 1, 1978 and March 19, 1979.

■ A materialman must commence an action under the Miller Act before "the expiration of one year after the day on which the last of the . . . material was supplied by him." 40 U.S.C.A. § 270b(b). Section 270b(a) further requires that a materialman having a direct contractual relationship with a subcontractor but no express or implied contractual relationship with the general contractor must provide the general contractor with written notice of his claim within 90 days of the date on which the materialman supplied the last of the material for which the claim is made. Id. § 270b(a);[1] United States ex rel. Pomona Tile Manufacturing Co. v. Kelley, 456 F.2d 148 (9th Cir. 1972); United States ex rel. State Electric Supply Co. v. Hesselden Construction Co., 404 F.2d 774 (10th Cir. 1968); United States ex rel. Greenwald-Supon, Inc. v. Gramercy Contractors, Inc., 433 F.Supp. 156 (S.D.N.Y.1977). However, the 90 day notice required under the Act and the one year time period within which an action must be instituted are measured from the last date that the Materialman delivered materials to the job site which were included in the construction contract, and not from the last date on which repair or replacement items were delivered to the job site. The furnishing of materials "for the purpose of correcting or repairing defects in work already done does not toll" the notice periods of the Miller Act. Gramercy, supra, at 162; United States ex rel. Noland Co. v. Andrews, 406 F.2d 790 (4th Cir. 1969); United States ex rel. Austin v. Western Electric Co., 337 F.2d 568 (9th Cir. 1964); United States ex rel. Lank Woodwork Co., Inc. v. CSH Contractors, Inc., 452 F.Supp. 922 (D.D.C.1978). Since the November 21, 1978 shipment of material by the Materialman to the job site was the only shipment by the Materialman within 90 days of its notice letter dated January 17, 1979, this Court must initially determine whether the material delivered to the job site on November 21, 1978 was included in the construction contract and/or a change order, or was supplied to repair or replace material which had been previously furnished. The burden is on the Materialman to prove that the material delivered to the job site on November 21, 1978 was included in the construction contract and/or a change order. United States ex rel. Edwards & Co. v. Peter Reiss Construction Co., Inc., 174 F.Supp. 264 (E.D.N.Y.), aff'd, 273 F.2d 880 (2d Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960); see United States ex rel. Soda v. Montgomery, 253 F.2d 509 (3d Cir. 1958).

---

1. Section 270b(a) provides:

Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. . . .

Both the Materialman and the Subcontractor testified that the material delivered to the job site on November 21, 1978 was an explosion proof receptacle and plug for a public address system. The Subcontractor testified that this receptacle and plug were items which were included in the construction contract and/or a change order and were not repair or replacement items. Mr. Alan Shea, who was a construction representative for the Navy at the job site, testified that the public address system installed on the job site was operational in December 1977 and was accepted by the Navy when it beneficially occupied the job site in December 1977. He further stated that the public address system malfunctioned in the summer of 1978 and, as a result, the explosion proof receptacle and plug for the public address system were repaired or replaced sometime thereafter. On the basis of the evidence heretofore discussed, the Court finds that the Materialman has failed to carry its burden of proving that the items delivered to the job site on November 21, 1978 were included in the construction contract and/or a change order. The notice letter of the Materialman dated January 17, 1979 was therefore not timely under the section 270b(a) because it was not delivered within 90 days of the furnishing of the last material by the Materialman which was included in the construction contract and/or a change order.

As previously stated, the record shows that the Materialman sent appropriate notice letters on December 8, 1977 and January 17, 1979. The General Contractor admits that in August 1978 the Materialman supplied materials for the job which were included in the construction contract and were not repair or replacement materials. Therefore, the action filed by the Materialman on February 16, 1978 was untimely and affords the Materialman no right of recovery because it was filed before the Materialman furnished the last of the materials under the construction contract for which it claims payment. 40 U.S.C.A. § 270b(a); *Marmet Corp. v. Frank Briscoe Co.*, 382 F.2d 906 (6th Cir. 1967). The action filed by the Materialman on December 1, 1978 relies on a last delivery date for material of August 10, 1978, but no notice letter was sent by the Materialman within 90 days of August 10, 1978. Section 270b(a), however, also provides that a materialman need not comply with the 90 day notice provisions of that section if the materialman has entered into a "contractual relationship express or implied" with the general contractor. 40 U.S.C.A. § 270b(a); *Hesselden, supra.* Since the Materialman filed two actions within one year of its furnishing of the last material included in the construction contract, 40 U.S.C.A. § 270b(b), the Materialman is not barred from recovery by the 90 day notice provision of section 270b(a) if there was a contractual relationship between it and the General Contractor.

As previously stated, from sometime early in 1977 until approximately November 1977 the Materialman received payment for materials supplied to the job site by checks issued each month by the General Contractor which were jointly payable to the Subcontractor and the Materialman. In November 1977, the Materialman notified the General Contractor that it would not extend further credit to the Subcontractor and that no further orders would be accepted for the job until the unpaid balance was paid. The Materialman and the General Contractor then entered into an agreement, the terms of which were confirmed by a letter dated December 1, 1977 from the Materialman to the General Contractor. As previously stated, this letter acknowledged receipt of $29,528.78 from the General Contractor and stated that the General Contractor agreed to pay the Materialman $10,-000.00 every thirty days until the unpaid balance on the subcontractor's account, which was $30,673.85 after receipt of the $29,528.78 check, was paid. The letter also stated that the General Contractor agreed to pay for any future orders of material for the job site within thirty days after delivery. The Materialman received no further payments from the General Contractor. The General Contractor acknowledged that he conferred with the Materialman in No-

vember 1977, that he sent a check to the Materialman at that time for $29,528.78, and that he received the Materialman's December 1, 1977 letter and did not reply. On the basis of this evidence, the Court finds that the Materialman and the General Contractor, on or about December 1, 1977, entered into a "contractual relationship," and that the Materialman is therefore relieved from the 90 day notice requirement of section 270b(a). *Gramercy, supra.*

The Subcontractor testified that all of the materials ordered by it for which the Materialman has not been paid (Exhibit P1–1 through 1–141) were installed on the job site. As previously stated, the Materialman testified that the total balance of the 141 invoices for which payment has not been received is $50,634.58. The Court therefore finds that the Materialman is entitled to recover $50,634.58 for these materials. *Pomona Tile, supra.*

The Materialman may also recover for the service charges which accrued on the unpaid balance of the Subcontractor's account. Each bill of the Materialman to the Subcontractor stated that a service charge of 1½% per month would be imposed on any unpaid balances outstanding for more than sixty days. The Materialman testified that its records showed an accumulated service charge of $38,583.38. The General Contractor contends that it is not liable for the service charge, but did not dispute the amount of the service charge which had accrued. In *D&L Construction Co. v. Triangle Electric Supply Co., Inc.,* 332 F.2d 1009 (8th Cir. 1964), the Eighth Circuit held that the liability of the general contractor and sureties to a materialman under the Miller Act is governed by the contract pursuant to which the materialman furnished materials to the subcontractor. In this action, each of the Materialman's bills to the Subcontractor specifically provided that a service charge of 1½% per month would be imposed on balances outstanding for longer than sixty days. The Court therefore finds that the Materialman may recover the service charge in the amount of $38,583.38. *D&L Construction, supra; Continental Casualty Co., Inc. v. Allsop Lumber Co., Inc.,* 336 F.2d 445 (8th Cir. 1964).

For the reasons set forth in this Memorandum, the Court will enter a verdict and judgment in favor of the Materialman and against the General Contractor, National and American in the amount of $89,217.96, which represents $50,634.58 for materials for which the Materialman did not receive payment and $38,583.38 for the service charges which accrued on the Subcontractor's account. This Memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). An appropriate order will accordingly be entered.