UNITED STATES of America, for the Use and Benefit of LIGHT & POWER UTILITIES CORPORATION, Plaintiff-Appellant,

v.

LILES CONSTRUCTION COMPANY, Inc., and United States Fidelity & Guaranty Company, etc., et al., Defendants-Appellees.

UNITED STATES of America, for the Use and Benefit of LIGHT & POWER UTILITIES CORPORATION, Plaintiff-Appellant,

v.

FRED CURTIS, INC., and Fidelity and Deposit Company of Maryland, etc., et al., Defendants-Appellees.

Nos. 29633, 29634.

United States Court of Appeals, Fifth Circuit.

March 15, 1971.

Michael J. Freedman, Arnold D. Levine, Tampa, Fla., Levine & Freedman, P. A., Tampa, Fla., for appellant.

Leonard Gilbert, Tampa, Fla., R. Earl Welbaum, Miami, Fla., Capell, Howard, Knabe & Cobbs, Montgomery, Ala., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P. A., Tampa, Fla., for appellees.

Before GEWIN, COLEMAN, and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

By these appeals we are at the outset presented with the issue of whether Light and Power Utilities Corporation, supplier of certain material to Southeastern Electrical Enterprises, Inc.,[1] a subcontractor on Government construction projects in Florida, notified the prime contractors of its claims against the subcontractor within the ninety day period prescribed by 40 U.S.C.A. § 270b(a).[2] The prime contractors were Liles Construction Company and Fred Curtis, Inc., the appellees in this consolidated appeal. In findings of fact and conclusions of law, in non-jury trials, the District Court held that the notices had not been so given. We affirm.[3]

Liles Construction Company, Inc. (Liles) and Fred Curtis, Inc. (Curtis) were prime contractors on several proj-

---

1. In this connection see United States for Use and Benefit of Light and Power Utilities Corp. v. L. B. Samford, Incorporated, 5 Cir., 1970, 423 F.2d 1028.

2. 40 U.S.C.A. § 270b(a) [The Miller Act]
   "Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, However,* that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished *or supplied or for whom the la-* bor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or *his residence,* or in any manner in which the United States Marshal of the district in which the public improvement is situated is authorized by law to serve summons."

3. This action obviates the necessity for deciding the other issues raised by the appellants, although they have received careful consideration in the over-all context of the litigation.

ects at MacDill Air Force Base, Tampa, Florida. United States Fidelity & Guaranty Company and Fidelity and Deposit Company of Maryland were the sureties on the performance and payment bonds.

Liles was engaged in the construction of a dining hall and four dormitories for airmen stationed at MacDill.

Curtis was remodeling the Base Equipment Management Office and the construction of the Automotive Maintenance Building.

The electrical subcontractor for both companies was Southeastern Electrical Enterprises, Inc. (Southeastern).

The appellant, Light & Power Utilities Corporation (Light & Power), is a manufacturer of electrical fixtures and equipment. Light & Power employed Milton Fewell as its sales representative on a commission basis for the Florida area. After hearing that Southeastern had received the electrical subcontract for the MacDill projects, Fewell contacted Loyd E. Dyal, Jr., president of Southeastern, and Tom Borchers, a Southeastern employee, to review the plans and specifications for the electrical work to be performed on the project. At this meeting Fewell and Dyal determined the type, quantity, and quality of the fixtures required for the job. The parties also determined the price Southeastern would pay for the fixtures including a distributors "profit or handling charge". According to the agreement, Southeastern was to have the option of choosing a "distributor" through whom the order would be placed. Their first choice was General Electric Supply, but they changed the designation to Electric Supply Company.

Shortly, Jack E. Long, an employee of the distributor, was sent to Southeastern to take an order for fixtures. Long had no part in the negotiations between Fewell and Dyal, he simply took the order. A purchase order was given by Southeastern to the distributor on April 11, 1966, who in turn sent one to Light & Power on May 17, 1966.

In response to these purchase orders Light & Power shipped fixtures to Southeastern at MacDill. Light & Power purchased some of the fixtures from Delta Incandescent Manufacturing Company. Delta also shipped its fixtures to MacDill. Delta and Light & Power each separately billed Electric Supply Company for the shipments. Electric then billed Southeastern.

It is not disputed that the last delivery of fixtures by Light & Power to Liles reached Tampa on July 11, 1966.

The last delivery to Curtis was found by the District Court to have taken place on the same date. The truck driver's log showed that a delivery arrived on July 11, 1966, and that the driver left the next day.

Light & Power contends that the last date of delivery to Curtis was August 23, 1966. The invoices bearing this date had no delivery ticket and had no charge on them.

Curtis' and Liles' subcontract with Southeastern required that all of the fixtures be approved by the United States Corps of Engineers. After the agreement and orders were entered into by Southeastern and Light & Power, some questions arose as to whether the fixtures complied with the requirements of the job as dictated by the Corps. Fewell was notified and met with representatives of the Corps in Jacksonville. At the meeting some of the fixtures were approved and some were not.

By July, 1966, Southeastern appeared to be in distress, so Fewell, Johnny Collins, and Ted Sullivan for Light & Power met with Loyd Dyal to discuss the failure of payments to Light & Power. At the meeting Dyal stated that he would make arrangements with the *prime contractors* to make checks payable jointly to Southeastern and Light & Power. This arrangement was confirmed on July 19, 1966, by a letter to Johnny Collins, who had replaced Milton Fewell. Liles, subsequently, agreed to issue jointly payable checks and commu-

nicated this to Light & Power on July 26, 1966. There is no record of a response from Curtis. No checks were ever issued.

On October 14, 1966, Light & Power, through its attorney, sent notice of payment due them from Liles Construction and Curtis, Inc. in the amount of $20,393.38. This notice was received by both defendants on October 16, 1966. The letter stated that it was the notice required by the Miller Act, 40 U.S.C.A. § 270b(a). The letter was obviously sent after the expiration of the ninety day notice period prescribed by the Miller Act.

Subsequently, Light & Power filed suit for $8,780.72 against Liles and $8,500.88 against Curtis, claiming the Miller Act coverage.

The facts are slightly different as to Liles and Curtis.

■ Liles will be discussed first. The last delivery of fixtures involving Liles was made on July 11, 1966. This date is accepted by both parties and thereby establishes that notice was given by Light & Power more than ninety days from the last delivery. Light & Power contends nevertheless that physical delivery of the fixtures to the job site did not constitute a "furnishing or supplying" within the context of the Miller Act, because the fixtures had to be approved by the Corps of Engineers.

No cases directly in point are cited. Light & Power does, however, cite cases which it claims to be analogous. The first is United States for Use of General Electric Co. v. Gunnar I. Johnson & Son, Inc., 8 Cir., 1962, 310 F.2d 899. In this case the Court was dealing with a situation where two parts furnished on a purchase order for the "entire electrical distribution system" were so defective and improperly prepared that they could not be installed and had to be replaced. The Court held that the ninety days could not begin to run until delivery was made in a useable condition. Another case is United States for Use of Noland Co. v. Andrews, 4 Cir., 1969, 406 F.2d

790. In that case certain valves were missing on the work done. The ninety days notice was held to begin on the day of delivery of the valves.

Both these cases clearly deal with late shipments, which is not the situation here. The last date anything was delivered was July 11, 1966. Light & Power states that certain fixtures were not approved by the Corps and were returned to the factory. However, no replacements were sent so as to extend the notice requirement.

The final case cited by Light & Power is Trinity Universal Insurance Company v. Girdner, 5 Cir., 1967, 379 F.2d 317. That case involved the replacement of a defective part before the government inspector would approve the work. This is clearly in contrast to our case, where there was no replacement and no delivery of any parts after July 11, 1966. The ruling in favor of Liles Construction Company, Inc. was correct.

■ Now, we turn to the notice requirement as it applied to Fred Curtis, Inc. Light & Power contends that August 23, 1966, was the last date of delivery of fixtures to Curtis. However, there are no delivery tickets for that invoice, and there was no charge made. If we take Light & Power's view and accept that there was a shipment delivered on August 23, 1966, we must assume that it contained replacement parts since there was no charge for the shipment. In General Insurance Company of America v. United States for Use of Audley Moore and Son, 5 Cir., 1969, 406 F.2d 442, this Court held that correction of errors does not extend the time for filing suit under § 270b. Replacement of parts would be the correction of a shipping error. In a per curiam opinion on a petition for rehearing on the above case this Court distinguished *Trinity* saying:

"In that case the inspector refused to approve the original work unless defective parts were replaced. This is to be distinguished from the situation in which labor is supplied or material

478

furnished to correct defects after the work has been completed." 406 F.2d 442.

In regard to the above discussion it must be remembered that the District Court found that the last delivery was made on July 11, 1966. That finding is not clearly erroneous, therefore Light & Power did not meet the ninety day notice requirement in any event.

Light & Power next contends that it had a direct contractual relationship with Liles and Curtis. The basis of this contention is the alleged July agreement between the defendants and Light & Power to issue jointly payable checks. The record indicates that Liles agreed to issue the joint checks to Southeastern and Light & Power. There is no evidence of any agreement by Curtis. We follow the ruling in United States for Use of State Electric Supply v. Hesselden Construction Company, 10 Cir., 1968, 404 F.2d 774, in which, on facts identical to the instant case the Court held that the agreement did not establish a contractual relationship between the materialman and the prime contractor.

The statute provides a method by which those who supply subcontractors may protect themselves. The protection must be invoked within ninety days of the last delivery of goods. The reason for such a limitation is obvious. Contractors should not be compelled to wait around with their liabilities unknown or unsettled for an indefinite length of time, at the convenience of those who may wish to give notice of a claim. Moreover, the statute specifically requires formal notice, in writing. What the contractor may have been told, or heard, is insufficient. If certain conditions precedent are met the contractor will thereby be made liable; by the same token the contractor is entitled to rely on the statute for protection against claims tardily filed.

The judgments of the District Court are

Affirmed.