771 A.2d 712

LABORERS LOCAL UNION # 779 PENSION, WELFARE, AND AN-
NUITYFUNDS, ET AL.  PLAINTIFF, v. AMERICAN CASUALTY
COMPANY OF READING, PENNSYLVANIA DEFENDANT

Superior Court of New Jersey
Law Division Somerset County

Decided October 13, 2000.

*Gary A. Carlson,* Esq., *Lynch Martin Kroll,* for Plaintiff.

*Priscilla J. Triolo,* Esq., *Peckar & Abramson,* for Defendant.

HELEN E. HOENS, J.S.C.

Before the court are the cross-motions for summary judgment filed by the parties to this action. These motions raise a number of issues of first impression relating to the meaning and interpre-

tation of the New Jersey Public Works Bond Act, *N.J.S.A.* 2A:44–143 *et seq.,* including an issue specifically left open by our Supreme Court in *Board of Trustees v. L.B.S. Construction Co., Inc.,* 148 *N.J.* 561, 691 *A.*2d 339 (1997), *cert. denied,* 522 *U.S.* 861, 118 *S.Ct.* 163, 139 *L.Ed.*2d 107 (1997). The procedural history of this dispute is complex and the factual contentions, although undisputed, are intricate, as a result of which we address them in turn at some length.

This dispute arises from construction work at an elementary school project in Hillsborough Township ("Project"). Controlled Construction, Inc. ("Controlled") served as the general contractor on the Project. Controlled entered into a subcontract with Matera Mason Construction, Inc. ("Matera") for masonry services. Matera, in turn, pursuant to its collective bargaining agreement, employed union workers affiliated with plaintiffs, Laborers Local Union 779 and Bricklayers and Allied Craftsmen Local 26, ("plaintiffs"). As this was a public works project, Controlled secured a Labor and Materials Payment Bond ("the Bond") as required by the Bond Act, *N.J.S.A.* 2A:44–143, which Bond was issued on November 10, 1997 by defendant American Casualty Company of Reading PA ("American Casualty").

Matera began work on the Project as early as February 1998 and ended its work on November 19, 1998. Plaintiff Local 779 advised Controlled by letter in September 1998 that Matera had failed to remit fringe benefit contributions to its pension fund which were due under the collective bargaining agreement with plaintiff Local 779. Plaintiff Local 26 in October 1998 also informed Controlled that Matera was similarly delinquent in making fringe benefit payments to its Pension Fund. Controlled on October 15, 1998 and in December 1998 made payments to plaintiffs for fringe benefit contributions on Matera's behalf.

On March 9, 1999, after Matera had ceased work on the Project, Controlled received a letter from plaintiff Local 26 alleging that Plaintiff Local 26 was a beneficiary under the Bond and asserting a bond claim for additional unpaid fringe benefit contributions.

On March 12, 1999, Controlled received a similar letter from plaintiff Local 779 in which Plaintiff Local 779 also alleged beneficiary status and asserted a claim under the Bond for unpaid fringe benefit contributions. Defendant American Casualty by letter dated March 22, 1999, asked plaintiffs to provide copies of any notice of their status as beneficiaries that plaintiffs had provided to Controlled prior to commencing work on the Project, as required by *N.J.S.A.* 2A:44–145. Plaintiff Local 26 submitted an April 30, 1999 letter which enclosed a copy of its March 9, 1999 claim letter to Controlled. Defendant on May 5, 1999 denied plaintiffs' claims on the ground that plaintiffs failed to provide the notice required by the Bond Act in order to assert a valid bond claim.

As a procedural matter, the defendant filed its motion for summary judgment late in 1999, arguing that it was entitled to summary judgment on all issues raised in the complaint on the ground that plaintiffs had failed to give timely notice of a claim under the Bond and in accordance with the statutory requirements as to notice. At the same time, the defendant contended that the claim raised by the plaintiffs was so obviously without merit that an award of counsel fees, pursuant to the frivolous litigation statute, *see N.J.S.A.* 2A:15–59.1, and Court Rule, *see Rule* 1:4–8, was appropriate. In opposition to that motion, plaintiffs contended that the motion was premature given the limited discovery that had been exchanged prior to the filing of the motion, but opposed the motion on its merits as well. Plaintiffs argued that timely notice had been given, that requiring advance notice would, in these circumstances, frustrate the protective purposes of the Bond Act and that the union pension funds were in any event covered by the Bond as issued notwithstanding any contrary requirement of the Act. At the oral argument on the motion, the court raised the issue, alluded to in the defendant's reply brief, of whether the unions could be entitled to beneficiary status under the Bond Act and invited further briefs addressed to that question. The parties submitted further briefs which, predictably, took opposite sides on the issue of whether under the Bond Act or the Bond as issued a

union pension fund could be considered to be a beneficiary entitled to make a claim.

Thereafter, while the motion was pending, discovery continued between the parties, directed in large measure to the intent of Controlled and American Casualty, that is the parties to the surety agreement, as to the meaning of certain restrictive language added by the surety into the form language of the bond. Following the completion of that discovery, in mid–2000, the plaintiffs determined that there were indeed no genuine issues of material fact as a result of which the plaintiffs filed their cross-motion, seeking summary judgment in their favor on all of the issues raised in the complaint. As the issues were fully briefed at that point, counsel for both parties waived further oral argument. The court having had ample opportunity to review the briefs and exhibits, to hear the oral arguments of counsel and to consider the novel and complex issues raised, issues this decision.

The contentions of the parties and the grounds for their cross-motions can be summarized briefly. Defendant asserts that plaintiffs failed to give notice as required by the Bond Act until after all of Matera's work had ceased, effectively barring them from making any claim against the bond. *See N.J.S.A.* 2A:44–145. In the alternative, defendant contends that the unions and their pension funds are not within the class of permissible beneficiaries of the bond as defined by the statute, thus precluding them from being claimants. Plaintiffs contend that their letters in 1998 constituted adequate notice of their claims and argue that in this circumstance the strict application of the notice requirement would frustrate the protective purpose of the Bond Act. Plaintiffs further contend that they are entitled to beneficiary status under the Act and argue in the alternative that the Bond itself includes terms more expansive than the narrow parameters of the Bond Act, independently entitling them to assert their claim here. Based on these arguments, each party seeks judgment in its favor.

We turn first to the arguments concerning notice. Notice relating to bond claims on public works, in the first instance, is

governed by the statutory provisions of the Bond Act. In particular, *N.J.S.A.* 2A:44–145, governing notice of a bond claim, provides in relevant part as follows:

> Any person who may be a beneficiary of the payment bond, as defined in this article, and who does not have a direct contract with the contractor furnishing the Bond shall, prior to commencing any work, provide written notice to the contractor by certified mail or otherwise, provided that he shall have proof of delivery of same, that said person is a beneficiary of the Bond. If a beneficiary fails to provide the required written notice, the beneficiary shall only have rights to the benefits available hereunder from the date the notice is provided.

*N.J.S.A.* 2A:44–145. Defendant American Casualty contends that the letters sent by the two pension funds in 1998 were inadequate to serve as the notice required by the Act. The surety points out that the letters merely advised Controlled that the subcontractor, Matera, was failing to pay union fringes as required by its collective bargaining agreement with the unions, and argues that the unions failed, therefore, to give notice of a claim as required, because the letters sent in that time frame did not describe the unions or their pension funds as beneficiaries under the Bond. In contrast to the claim letters sent after Matera had left the job, the 1998 letters contain no suggestion of any beneficiary status and as a result, there is no potential bond claim asserted in the earliest correspondence. In fact, the plaintiffs concede as much in their responsive brief, which argues that in these circumstances the notice requirement defeats the protective purposes of the Act and should not as a result be applied to bar this claim.

The language of the statute regarding notice is crystal clear. Plaintiffs, which concededly were not parties to any direct contract with Controlled, were required under the Act to give notice in advance of the commencement of any work to which their claim relates of their claim of beneficiary status or, failing that, were barred from asserting any claim against the Bond which arose prior to the date of the notice. There is no serious suggestion that the early letters advising the general contractor that the subcontractor Matera was in default of its obligations pursuant to the collective bargaining agreement as respects payments to the pension funds constituted notice within the meaning of *N.J.S.A.*

2A:44–145. Therefore, if the notice provision applies to the pension funds, their claim, and in particular their claim of beneficiary status, which was not filed until after Matera had ceased to perform on the job, is barred.

The issue then becomes whether there is a valid ground on which to conclude, as plaintiffs urge, that the Act's provision regarding notice should not apply to the pension funds or that its application to them would, in reality, defeat the purposes of the Bond Act. First, plaintiffs' suggestion that application of the notice provision would require each and every individual mason to notify the general contractor in advance of starting work of a claim of beneficiary status is without any merit. The individual masons supplied by the unions would not, in this instance, be required to give notice, as they are not the claimed beneficiaries before the court. At most, consistent with the Act, the unions or the pension funds would be required to give notice if they believed that they were Bond beneficiaries. Indeed, the notice requirement, if interpreted to excuse these entities from its reach, would become a nullity, for such an analysis would create an exception to the clear language of the Act inconsistent with the purpose of the notice requirement. The language of the section of the Act is both broad and inclusive, referring to "any person" who may have a claim; it does not narrowly describe the class of persons or entities which might be bound by it and which might be consistent with plaintiffs' analysis. For these reasons, the suggestion that the notice provision was complied with or in the alternative that it does not apply to these claimants is without merit and the contention of the defendants that the claims fail for want of notice, standing alone, is persuasive.

It is in this context that the purpose of the notice requirement is significant. As defendant correctly points out, this aspect of the Bond Act was amended in 1996. That amendment was part of a much larger re-examination of legislation governing the construction industry and the assertion of claims generally in the construction context. One of the significant goals of those amendments

was the reduction of uncertainties concerning claims and claimants which plagued the construction industry and, by extension, the surety industry. As defendant notes, the lack of a notice requirement and the general imprecision in the claims process led to overpayment, to duplicative claims and to significant uncertainty. While as a practical matter, for example, the general contractor and its surety knew in general the identities of subcontractors, they often knew little of the existence, let alone the identities, of the subcontractors' own subs, or their suppliers or materialmen. As a result, the amended notice provision served, in the first instance, to identify potential claimants and beneficiaries in a uniform and organized fashion. While much of the focus of the amendments was directed to the mechanics lien law, the amendments to the Bond notice provision are wholly consistent with this larger legislative purpose. *See* S. 834, Report of Senate Commerce Committee (June 3, 1996); A.1034, Report of Assembly Local Government Committee (May 13, 1996). Therefore, plaintiffs' argument that the notice requirement should not apply to them or that its enforcement would frustrate the protective purpose of the Act is not, in this context, persuasive. On the contrary, holding that these entities, who may or may not be beneficiaries entitled to assert claims against the Bond, should be exempt from the notice requirement would itself frustrate the purpose of the Act, for it would greatly expand the potential pool of claimants without any mechanism for notifying the general contractor or its surety of their existence in advance.

The notice argument, however, cannot stand alone in the circumstances of this case, for the contentions of the parties include other arguments in the alternative. Plaintiffs argue in the alternative that if the notice requirement in general applies to them, that their initial letters to Controlled constituted notice, timely under the Act for all work performed thereafter. Defendant argues in opposition to this contention that while Controlled concededly received correspondence concerning unpaid fringe benefits relating to the Matera laborers, these letters did not constitute notice of a claim. Plainly the surety is correct in its analysis.

The provision of the Act concerning the elements of a valid claim for notice purposes is specific. The Act requires that the notice specify that the party is, or claims to be, a beneficiary of the bond. *N.J.S.A.* 2A:44-145. This fundamental requirement plainly was not met by the early correspondence to Controlled by the unions, for they made no allegation at that time that they were or sought to be beneficiaries of the bond. Their correspondence initially alerted Controlled that Matera was not paying for union fringes and benefits due to the unions pursuant to the contracts that they had entered into with Matera. It is uncontroverted that thereafter Controlled either made payment on behalf of Matera or importuned Matera to do so, as a result of which the unions made no further claim and certainly made no claim as against the Bond. Thus, to the extent that the plaintiffs contend that the initial letters of complaint to Controlled complied with the notice requirements of the Act and of the Bond, they are plainly incorrect.

Significantly, even if they had given timely notice, defendant contends that the unions are not and cannot be beneficiaries of the Bond and thus are not entitled under the Bond or the Act to make a claim in the first instance. While the plaintiffs argue that the Supreme Court has previously held that union fringe benefits fall within the definition of labor or wages and as a result that they are entitled to beneficiary status under the Bond, *see Board of Trustees v. L.B.S. Construction, supra,* plainly the Court did not so hold, but left the issue open for resolution on a future application. In *L.B.S.,* the Court addressed a factually different situation and specifically noted that the Bond Act "is neutral on the question of fringe benefits," 148 *N.J.* at 577, 691 *A.*2d 339, and left open the issue of whether the Act or the Bond permitted a claim by a party other than the obligee, including a claim for fringe benefits. *Id.* at 578, 691 *A.*2d 339. We therefore address the issues specifically left open by the Supreme Court in the context of this dispute.

An explanation of the issues which were decided in *L.B.S.* is necessary for an understanding of the result we reach on this

question. In *L.B.S.* the Supreme Court addressed claims pursuant to two different bonds issued by sureties for two different entities. As to each of the entities, the union pension funds were parties to a collective bargaining agreement, one with Gran Construction, a general contractor and the other with L.B.S. Construction, also a general contractor. Each of the general contractors, thus, was a party to the collective bargaining agreement with the unions and was also the party posting the surety bond covering labor and materials. The significance is important, for it is in this context that the Court commented that fringe benefits may be understood by the contracting parties to be included within the term "wages." In that context, the significant fact, however, is that the unions and the contractor who posts the Bond are direct signatories to the agreement which has given rise to the claim for unpaid fringe benefits. That direct relationship, however, is lacking in the matter before this court and it is this more attenuated relationship which creates the distinction in the legal right of the parties. Indeed, the Court in *L.B.S.* recognized the significant issue that we now face in this dispute, raising at the end of the *L.B.S.* opinion the series of rhetorical questions concerning bond coverage in situations more similar to the one before this court. It was in that context that the Court specifically left open the issue of whether a union which was not also a party to a collective bargaining agreement with the obligee on the Bond might nonetheless qualify under the Bond or within the Bond Act as a beneficiary. *Id.* at 578, 691 *A.*2d 339. And it is this issue which the parties have now placed squarely in issue in this dispute.

Defendants contend that the plaintiffs cannot be beneficiaries under the Bond. They point to the legislative history of the 1996 amendments to the Bond Act to support the argument that the Legislature intended that the beneficiary class be both defined and, as a result, limited. Arguing that the Act was amended to protect the sureties from late filed claims by parties to contracts with subcontractors which had historically resulted in overpayments, defendant argues that the restrictions imposed by the

amendments bar these unions from asserting that they are beneficiaries under the Act. Plaintiffs assert that the legislative history is entirely to the contrary, arguing that the entire legislative scheme is focused on the protection of the workers, and suggesting that the Supreme Court in *L.B.S.* by its recognition that the practice of including union fringe benefits within the concept of wages was widespread requires that this court now find that the failure to pay these amounts creates beneficiary status for the unions within the meaning of the Bond Act. This court does not agree.

In order to properly evaluate whether any entity is a beneficiary under the Act, it is necessary to review both the definition of beneficiary which is found within the Act, *see N.J.S.A.* 2A:44–143, and the related language of the notice provision concerning the claims which can be asserted by a beneficiary. We begin with the definition of beneficiary as set forth in the Bond Act. The Act, in relevant part, provides for the posting of a bond to create an obligation to ensure payment as follows:

> for all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of such buildings, works or improvements provided by subcontractors or material suppliers in contract with the contractor, or subcontractors or material suppliers in contract with a subcontractor to the contractor, which class of persons shall be the beneficiaries of the payment and performance bond.

*N.J.S.A.* 2A:44–143a(1). Similarly, the provision of the Act respecting notice identifies the types of claims which may be made as against the surety in limited terms, providing that the claim of a beneficiary shall be for money owed as a result of the beneficiary "having performed any labor or furnished any materials, provisions, provender or other supplies, or teams, fuels, oils, implements or machinery in, upon, for or about" the construction project. *See N.J.S.A.* 2A:44–145. In this context, the definition of the subject matter of a valid claim is rather expansive, but at the same time, is specific to the extent that the claims to be raised by these parties are simply not included. This listing of the types of activities which a beneficiary might have performed or provided

and which would potentially give rise to a bond claim is, as a result, instructive with respect to the determination of whether or not these plaintiffs can be seen to be within the class of intended beneficiaries of the Bond. In this regard, while it is quite true that many contractors engage the services of union laborers as to whom fringe benefits are due and owing to entities such as these plaintiffs, nonetheless, there is no sense of the definition of beneficiary and no reading of the description of the claims which may be made as against the Bond which supports the contention of the unions that they might achieve beneficiary status. Rather, the class of beneficiaries identified by each of these provisions is precise and does not under any reading extend to the union pension and benefit funds. As the defendant contends, the overall focus of the amendments to the Bond Act was the creation of a more uniform system for the disposition of bond and other construction claims, as a part of which the changes to the Bond Act had the effect of creating a limitation of the class of the permissible claimants under the Bond. In that context, the Act's scope must be narrowly and not broadly construed. *See Munoz v. New Jersey Auto. Full Ins. Underwriting Association,* 145 *N.J.* 377, 384–85, 678 *A.*2d 1051 (1996). Thus, to the extent that the language of the Bond Act itself governs the status of the plaintiffs, their claim must fail for want of beneficiary status.

This conclusion, that the plaintiff union pension and benefit funds are not entitled to beneficiary status under the Bond or under the Bond Act is further supported by the unrebutted evidence offered by defendant that the collective bargaining agreement between these plaintiffs and the subcontractor, Matera, specifically provided that Matera post its own bond for the protection of the unions respecting the failure to pay fringe benefits. That fact, in and of itself, belies the suggestion of the unions that they believed or expected that they might be beneficiaries of the surety bond posted by the general contractor. More to the point, the requirement of the collective bargaining agreement respecting the separate bond requirement is entirely consistent with the Supreme Court's analysis in *L.B.S.,* in which the status of the

pension fund as respects the Bond was a corollary of the identical relationship that those pension funds had with the general contractors which had there posted the bonds. It is as a result entirely consistent with this court's analysis of the very different role that the unions played in these contractual arrangements and of the status that they might maintain as respects the Bond in issue here.

■ Notwithstanding that analysis, the plaintiffs contend that the language of the particular bond posted by defendant in connection with the Project is broader than the language of the Act so as to offer to them precisely the protection that they seek. In this regard, plaintiffs point to the language added to the Bond posted by defendant as support for the proposition that the Bond as issued encompasses claims beyond the strict parameters of the Act and that it is sufficiently broad to require that the surety now answer for the claims of these union funds. Plaintiffs point out that the Bond itself, in addition to giving surety for any claims as may arise pursuant to *N.J.S.A.* 2A:44–143, continues to provide surety for "all claims and demands incurred in or related to the performance of the Contract Documents." Second, plaintiffs contend that the performance bond contains like language, as a result of which the claims of these union funds must be found to fall within that separate instrument. Defendant, in opposition to these arguments, argues that the Bond itself is specifically limited by the inclusion of language which provides that the liability of the surety is limited to the obligations required by the statutes and is not in fact expanded as plaintiffs assert.

First, the plaintiffs have to some extent confused the two statutory types of bonds, namely the payment and the performance bond. Suffice it to say that the performance bond, by which the surety assures the completion of the project, that is the performance of the contract, is wholly unrelated to a claim by a laborer or materialman for payment of sums due it for its labor or materials. The only bond in issue here is the one which might conceivably answer for unpaid labor or materials, more commonly

referred to as the payment bond. Second, as the defendant has pointed out, the plain terms of the Bond in issue here limit and do not expand the obligations of the surety. The language makes plain that the undertaking of the surety is confined to the statutory obligations and does not in any way extend to other contractual obligations. Not only is the limiting language precise in this regard, but it was specifically added to the Bond by the parties to make the limitation plain. There can be no contention that the Bond was ambiguous or that the intention of the parties to the contract, namely Controlled and the defendant surety, were to the contrary. For this reason, the argument of the plaintiffs that the Bond itself serves to expand the class of potentially covered claims or claimants so as to include the union pension and benefit funds is without merit.

For all of the foregoing reasons, the motion of the defendant American Casualty Company of Reading PA for summary judgment is granted and the cross-motion of the plaintiffs, Laborers' Local 779 and Bricklayers Local 26 for summary judgment is denied. As the issues which gave rise to the complaint as they have been addressed in these cross-motions are complex and the claims which were raised cannot be said to have been made in bad faith, the defendant's contention that the complaint was frivolous is without merit and the motion for attorneys' fees on that ground is denied.