**UNITED STATES of America, for the Use and Benefit of LANK WOOD-WORK CO., INC., Plaintiff,**

v.

**CSH CONTRACTORS, INC. and Aetna Insurance Co., Defendants.**

**Civ. No. 78–463.**

United States District Court, District of Columbia, Civil Division.

July 6, 1978.

Paul M. Vincent, Carlyle C. Ring, Jr., Washington, D. C., for plaintiff.

Gregory D. Haight, Falls Church, Va., for CSH Contractors, Inc.

Edward Gallagher, Washington, D. C., for Aetna Ins. Co.

## MEMORANDUM

JOHN H. PRATT, District Judge.

■ The sole issue raised by the cross-motions for summary judgment filed by the subcontractor and surety in this action under the Miller Act, 40 U.S.C. §§ 270a, 270b, is whether the action was timely filed under the one-year limitations period incorporated in the Act. *Id.* § 270b(b). To prevail on a motion for summary judgment, a party must demonstrate that no genuine issue of material fact, viewed in the light most favorable to the opposing party, impedes its right to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973).

In connection with a contract between the United States and CSH Contractors for the remodelling of a facility at the National Zoological Park, CSH as principal and Aetna as surety entered into a bond rendering each of them liable for claims of suppliers of materials or labor for use by CSH in fulfilling its obligations as prime contractor. Lank Woodwork entered into a contract with CSH Contractors to supply certain wooden doors and other items for incorporation in the remodelling. On December 16, 1976, Lank Woodwork delivered to the job-site the doors it assumed were covered by its contract with CSH. On inspection of the doors that day, the CSH agent at the site determined that two were damaged and rejected both, returning one to Lank Woodwork the same day. The CSH agent also determined that a basement stairwell door included in the CSH-Lank contract had not been supplied. In its answers to Aetna's interrogatories, Lank indicates that it had read the specifications to indicate that the door in question, Door No. 14, was metal and therefore not within its contract with CSH. Answers of Plaintiff to Defendant Aetna Insurance Company's Interrogatories No. 11(a), at 6–7. On March 15, 1977, agents of the United States conducted a final inspection of the work, and by letter of March 16, 1977 to CSH Contractors, identified the missing or defective components

of the job for correction by CSH. The letter does not advert to Door No. 14 as such, but it does contain a directive that CSH "[h]ang missing stair door" in the basement. On March 18, 1977, Lank Woodwork delivered to the job-site Door No. 14 and replacements for the two damaged doors, all three doors having been ordered from the manufacturer by Lank after December 16, 1976. This action was filed March 17, 1978. Lank seeks to recover the sum of $6,224.75, alleging to be due and owing after demand on both defendants.

 ▬ Although the Miller Act is remedial in nature and intent, the one-year limitations period which forms an integral part of the statute is jurisdictional in character. *United States for the use of Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 468 (9th Cir. 1974). The determinative question here is whether the three doors delivered by Lank Woodwork to the job-site March 18, 1977 were "part of the original contract" or furnished merely for the "purpose of correcting defects, or making repairs following inspection of the project." *United States for the use and benefit of Austin v. Western Electric Co.*, 337 F.2d 568, 572–73 (9th Cir. 1964). If none of the three was supplied as part of the original contract, this action is untimely. On the other hand, if even one door was supplied in the course of Lank Woodwork's performance on the original contract, the action is timely, though not by more than two days.

The parties' memoranda in support of their motions * have focused on Door No. 14, there being agreement that the two other doors delivered March 18 were to replace damaged doors delivered December 16, 1976 to the job-site. Lank's factual explanation of why Door No. 14 had not been furnished December 16, namely that Lank had not considered Door No. 14 to be within its contract with CSH Contractors, has not been controverted by Aetna. However, Aetna's memorandum characterizes Lank's position on Door No. 14, as revealed in Lank's answers to Aetna's interrogato-

ries, as inconsistent. According to Aetna, plaintiff views Door No. 14 as being outside its contract with CSH contract for some purposes, but as being within the contract for purposes of the one-year limitations period. We detect no such inconsistency in plaintiff's position. Plaintiff's recitation of the circumstances underlying its belated delivery of Door No. 14 is that, upon being apprised by CSH on December 16, 1976, that Door No. 14 was specified to be wood and therefore fell within the contract between Lank Woodwork and CSH Contractors, plaintiff Lank decided to acquiesce on this point and ordered the door from its manufacturer. Nothing in this record sustains Aetna's assertion that plaintiff Lank has ever regarded Door No. 14 as the subject of a separate contract between Lank and CSH: instead, the record indicates that Lank's initial assumption that the door lay outside its contract with CSH was supplanted by its acquiescence in CSH's position that Door No. 14 was to be supplied by Lank.

Finally, Aetna argues that "in January, 1977, the Government accepted the project, subject to the correction of certain deficiencies, and occupied the building." The two exhibits tendered in support of this argument consist of a letter January 19, 1977 to CSH from a Government construction manager expressing appreciation for CSH work, and a "Contract Status Inquiry" completed October 18, 1977 by a Government contracts officer indicating that the "acceptance date" of the contract had been January 1, 1977. The precise meaning of the term "acceptance date" in this context is uncertain, but the question need not divert this inquiry, it being sufficient that the Government's final inspection did not take place until mid-March. Even a cursory review of the Government's March 16 letter to CSH compels the conclusion that the deficiencies noted went beyond defects in previously completed work; in many instances the work had not been done at all. The missing doors and the venetian blind pockets and window sills listed in the letter are but

---

* The submissions consist of the cross-motions only, plaintiff's motion having been filed in response to Aetna's, and counsel for Aetna

having determined to stand on Aetna's motion and not file a formal opposition to plaintiff's motion.

examples. The significance of the letter is that the Government did not consider CSH to have completed its performance under the contract. Inasmuch as at least one of the missing items was to be supplied to CSH by Lank Woodwork, it follows that Lank had not completed its performance until March 18. It may be that the two replacement doors delivered with Door No. 14 on March 18 constitute materials supplied solely to correct defects in prior performance. We need not decide this question, however, in light of the undisputed status of Door No. 14 as an item supplied for the first time on March 18.

In *Austin,* a "punch list" similar in character to the list contained in the March 16 letter from the Government to CSH included both repair and cleanup items and items deemed by the Court of Appeals to be work required for the completion of the project. 337 F.2d at 573. Because the incomplete items were minor in nature ** the trial court concluded that they did not suffice to extend the 90-day notice period which is a precondition to suit under the Miller Act. *Id.* at 571. The Ninth Circuit rejected the trial court's "substantiality" test of whether work on a contract is completed, and adopted a standard which looks, not at whether the work is minor, but solely at whether it is required for the completion of the project. *Id.* at 572–73 & n.12. The same standard operated to bar a Miller Act suit as untimely in *United States for the use of H. T. Sweeney & Son, Inc. v. E. J. T. Construction Co.,* in which the Court held that the reseeding of previously seeded areas constituted repair work rather than work required to complete the subcontractor's contractual obligations. 415 F.Supp. 1328, 1332 (D.Del.1976). The original seeding had long since been done. *Id.* Similarly, in *General Insurance Company v. United States for the use of Audley Moore & Son,* the Fifth Circuit rejected a subcontractor's argument that a field inspection and "final clean-up" of the project constituted supplying labor and materials under the one-year statute:

> It is undisputed that the only thing done by [subcontractor] Moore after April 2, 1966 was to take final measurements and to make a final inspection pursuant to preparation of his final estimate or statement. This was done in the latter part of April. All other activity had ceased and all materials had been supplied as of April 2.

406 F.2d 442, 443 (5th Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969).

Aetna attempts to bring the delivery of Door No. 14 within the ambit of these decisions by characterizing it as a correction of Lank Woodwork's prior performance, namely its omission of Door No. 14 from the December 16, 1976 delivery to the job-site. This characterization obscures the essential fact here: that Lank Woodwork had not supplied Door No. 14 previously. In that respect, the facts here are more akin to those in such decisions as *United States for the use and benefit of Palmer Asphalt Company v. Debardelaben,* in which the plaintiff materialman complied with the contractor's request that additional material be delivered under the original contract. 278 F.Supp. 722 (D.S.C.1967). Nine months after it had delivered 33 drums of aluminum coating under the contract, the materialman was asked to furnish additional coating, apparently because the original shipment had not proved sufficient. *Id.* at 723. Though considering itself not to be at fault, the materialman decided to acquiesce to the request, and furnished another three drums of the coating. The question before the Court was whether the second delivery was part of the original contract or merely correction of a defect in previous performance. The Court held for the materialman, noting that "[t]he delivery of the three drums was done without additional compensation in order that they [the materialman] could be assured that they had satisfactorily performed the original contract." *Id.* at 724.

Finally, we note that there is no suggestion that Lank Woodwork's March 18 deliv-

** They included door closers, window screens and hardware which had yet to be installed. 337 F.2d at 573 n.15.

ery of the three doors was unreasonably late, or was a sham calculated to revive a lapsed cause of action. In *Palmer Asphalt Company* the Court pointed out that when "the extra three barrels were sent in December of 1964 there had passed only nine months since the first delivery. Palmer Asphalt could have brought suit at that time without question." *Id.* Similarly, only three months separate the March 18 delivery, the validity of which has been questioned by Aetna, and the December 16, 1976 delivery, which is agreed to have constituted the supplying of material required under the original contract. Nothing herein suggests that the March 18 delivery was calculated to extend the period for bringing suit. *See United States for the use and benefit of First National Bank of Jackson, Mississippi v. United States Fidelity & Guaranty Co.*, 240 F.Supp. 316, 320 (N.D. Okl.1965).

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, and defendant Aetna's motion for summary judgment will be denied. An Order consistent with this Memorandum will be entered this day.