UNITED STATES of America for the Use and Benefit of CORBETT TECHNOLOGY SOLUTIONS, INC., Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, et al. Defendants.

No. CIV.A. 01–1239(RBW).

United States District Court, District of Columbia.

Dec. 12, 2002.

Bernard Corbett, Alexandria, VA, for Plaintiff.

Eric R. Stanco, Eric Stanco & Associates, Washington, DC, for Defendant Safeco.

Randal Wolfgang Wax, Shapiro, Lifschitz & Schram, PC, Washington, DC, for Defendant RWKS.

## MEMORANDUM OPINION

WALTON, District Judge.

Currently before the Court is plaintiff's motion for summary judgment. Because the Court concludes that there are material issues of fact pertinent to the resolution of this matter, it will deny the plaintiff's motion and permit the parties to conduct limited discovery.

### I. Background

The events leading to the present controversy in this case, brought pursuant to the Miller Act, 40 U.S.C. § 270(a)—270(f) (2000), are somewhat contorted but the Court will attempt to state them as succinctly as possible. The present dispute centers around a construction contract that the United States, through the Department of the Army, awarded to the Twigg Corporation ("Twigg"). The contract required Twigg to complete renovations to Building 61, at Fort McNair, Washington DC ("the Project"). Compl. ¶ 2.[1] Twigg and Safeco Insurance Company ("Safeco"), its surety, "executed a standard government form of payment bond to the United States of America, whereby they bound themselves jointly and severally in the amount of the contract ..." *Id.* ¶ 3. The United States accepted the bond and awarded the construction contract to Twigg. *Id.* ¶ 4.

1. References to "Compl." are to the complaint filed in this matter on June 6, 2001.

Twigg then hired Jenkins Electric Contracting Inc. ("Jenkins") as a subcontractor on the project. Thereafter, at some point in this series of events, the plaintiff, Corbett Technology Solutions, Inc., ("CTSI"), entered into a subcontract with Jenkins to provide materials and labor for the project. *Id.* ¶ 5. Jenkins, however, became unable or unwilling to perform its obligations as a subcontractor for Twigg and "CTSI (then known as Panurgy, DC Metro) entered into a verbal agreement on or about July 28, 1999, with Twigg to become a subcontractor, complete the project and be paid directly by Twigg." Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Mem."), Exhibit ("Ex.") A, Affidavit of Christopher R. Corbett, President of Corbett Technology Solutions, Inc., ("Corbett Aff.") ¶ 7.[2] Thereafter, in 1998, 1999, and 2000, CTSI supplied labor and materials to Twigg, at Twigg's request, for the project. Compl. ¶ 8. Twigg made direct payments to CTSI (which at the time was still known as Panurgy) for materials and labor provided for the project on July 28, July 29, and November 19, 1999. Corbett Aff., Ex. 1.

On or about December 1, 1999, RWKS Construction Inc. purchased Twigg, and changed Twigg's name to RWKS Construction, Inc. Pl.'s Mem, Statement of Genuine Facts to Which There Exists No Genuine Issue ¶ 20. CTSI last performed work on or supplied materials for the project on June 16, 2000. Corbett Aff. ¶ 9. However, as of June 8, 2000, CTSI was still allegedly owed a balance of $130,854.98 for labor and material provided for the project. Corbett Aff., Ex. 3, Recap of Jenkins Electrical/Twigg Corporation Account dated 6–08–00 ("Recap").

On June 19, 2000, CTSI informed Safeco, RWKS' surety, of RWKS' failure to pay CTSI for the labor and materials CTSI provided for the project. Compl. ¶ 11. On June 6, 2001, CTSI filed the present action pursuant to the Miller Act, 40 U.S.C. § 270(b), seeking $130,854.98 in damages, the amount it claims it was still entitled to receive from RWKS. CTSI filed its action seeking repayment against both RWKS and Safeco jointly and severally.[3] In the alternative, CTSI, "in its own right" demanded judgment against RWKS in the full "amount of $130,854.98 with interest from July 1, 2000, and the costs of this action." *Id.* ¶ 3, at 4.[4] RWKS filed a motion to dismiss the complaint on July 2, 2001, to which CTSI filed an opposition on July 3, 2001.

On October 1, 2001, RWKS filed a petition for bankruptcy pursuant to Chapter 11 of the bankruptcy code, 11 U.S.C. § 362(a)(1) (2000), in the United States Bankruptcy Court for the District of Maryland. Thereafter, on March 20, 2002, RWKS filed a Motion to Stay All Proceedings in this Court, which CTSI opposed. This Court held a hearing on this motion

2. According to plaintiff's complaint "RWKS ... reached an agreement with CTSI[ ] providing that if CTSI completed its work on the Project, RWKS would pay CTSI the amount owed under its contract with Jenkins ..." *Id.* ¶ 6. However, at the time of these events, the corporations were known as Twigg and Panurgy, respectively.

3. Pursuant to 40 U.S.C. § 270(b), "[e]very suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed ..." Corbett filed its suit seeking repayment on behalf of the "United States of America for the use and benefit of Corbett Technology Solutions, Inc."

4. The complaint in this matter does not contain page numbers. Therefore, references to the pages of the complaint are to the pages as they were presented to the Court in sequential order.

on April 3, 2002, at which time the Court orally granted RWKS's motion to stay the proceedings. At this hearing, Safeco made an oral motion requesting that the stay be extended to the proceedings against it. In a Memorandum Opinion dated April 30, 2002, this Court denied Safeco's oral motion for the extension of the stay. *United States of America v. Safeco Insurance Company*, No. 01–1239, slip op. at 10 (D.D.C. Apr. 30, 2002) (Walton, J.).

## II. *The Parties' Arguments*

On March 26, 2002, plaintiff filed the instant motion for summary judgment, arguing that there are no material facts in dispute and that Safeco, as RWKS' surety, is obliged to pay plaintiff the $130,854.98 it is owed by RWKS. Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") at 1. On May 10, 2002, Safeco filed an opposition to plaintiff's motion for summary judgment, arguing that there are several issues of material fact that preclude this Court from granting plaintiff's motion. Specifically, Safeco argues that there are material issues of fact in dispute concerning whether the Court has subject matter jurisdiction over this Miller Act claim because "CTSI has not established that it had a direct contractual relationship with the bond principal, Twigg, that would obviate the need for providing statutory notice to Twigg or RWKS within ninety days after it last provided work, labor or material on the bonded Project." Safeco Insurance Company of America's Memorandum of Points and Authorities in Support of Its Opposition to Plaintiff's Motion for Summary Judgment ("Safeco's Opp'n") at 3. Second, Safeco argues that documentation pertaining to this matter demonstrates that there is a genuine issue of fact in dispute regarding whether CTSI "filed suit within one year of its last work, labor or material on the Project . . ." *Id.* at 4. Finally, Safeco contends that even if CTSI actually timely filed suit, there is a disputed fact as to whether the work performed was of the type needed for the purpose of extending the statute of limitations under the Miller Act beyond the otherwise one year limitations period. *Id.*[5]

## III. *Analysis*

### A. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure sets forth the standard for deciding a motion for summary judgment: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must grant the motion for summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is mandated after there has been "adequate

---

**5.** Safeco also raises an issue regarding whether CTSI has given RWKS full credit for the funds received from Twigg in connection with the project. Safeco's Opp'n at 7. For example, Safeco notes that Mr. Corbett's affidavit attaches three checks totaling $133,062.19 payable to Panurgy while CTSI's account statement only credits $70,065.00 for these three payments. *Id.* at 7–8. In reply, CTSI states that it applied $87.58 of the monies it received from Twigg to pay bank charges "for returned checks and checks on which payment was stopped that were written by Jenkins." Pl.'s Reply at 6. The Court need not resolve this dispute as it determines there are other issues of fact that preclude summary judgment at this juncture.

time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex· Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment, nonetheless, is a "drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food & Drug Administration,* 803 . F.2d 1213, 1216 (D.C.Cir.1986). Summary judgment is accordingly not appropriate, for example, where "the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance ..." *Id.* (citations omitted).

### B. *Issues of Material Fact Alleged by Safeco*

The Court need not address all of the issues of material fact raised by Safeco because it finds that there is a material fact in dispute that may preclude CTSI from maintaining this action. The Court reaches this conclusion because pursuant to the Miller Act, a subcontractor must file suit no later than "one year after the day on which the last of the labor was performed or material was supplied by him." 40 U.S.C. § 270b(b). This "one year limitations period[,] which forms an integral part of the statute[,] is jurisdictional in character." *United States of America, for the Use and Benefit of Lank Woodwork Co. v. CSH Contractors, Inc.,* 452 F.Supp. 922, 924 (D.D.C.1978) (citation omitted).

And, there remains a disputed factual issue regarding the date when CTSI last performed work on the project. Although Mr. Corbett's affidavit states that the date was June 16, 2000,[6] Safeco has provided a letter to the Court from CTSI's collections manager, Amber Crotzer, which states that the "last date of work completed on this project was June 2, 2000. On June 19th 2000 CTSI formally filed against this bond." Safeco's Opp'n, Second Unsworn Declaration of Eric R. Stanco, Ex. A, Letter from CTSI to Safeco dated January 26, 2001. In addition, Safeco references exhibit 3 of Mr. Corbett's affidavit, the Recap dated June 8, 2000. According to the account summary the balance of $130,854.98 was due and owing at that time (June 8), which Safeco points out is inconsistent with CTSI's position that it performed additional work for Twigg/RWKS on June 16, 2000.

In its reply, CTSI argues that the Crotzer letter is an unsworn statement that contains an error that was corrected by the allegations in the complaint and Mr. Corbett's affidavit. Reply to Safeco Insurance Company's Memorandum of Points and Authority in Support of its Opposit on Plaintiff's to [sic] Motion for Summary Judgment and Its Statement of Genuine Issues and Material Facts ("Pl.'s Reply") at 4. Even though the letter is an unsworn statement, which is not the type of evidence that the Court is authorized to consider pursuant to Rule 56(e), there is also the Recap that CTSI attached to Mr. Corbett's affidavit, which the Court can consider. *See* Fed.R.Civ.P. 56(e) ("Sworn or certified copies of all papers or parts

---

6.  Despite CTSI's statement that the final date of the work is correctly stated in Mr. Corbett's affidavit and the complaint, the Court notes that the complaint does not allege an actual date on which the final work was performed. Paragraph 12 of the complaint merely states

that "[l]ess than one year has elapsed since the last date on which work was done and materials were delivered by Corbett Technology Solutions, Inc. to complete its part of the project."

thereof referred to in an affidavit shall be attached thereto or served therewith."). *See also Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 39 (D.C.Cir.1987) (in denying motion court considered documents that memorialized a transaction pertinent to the case that were submitted by the party moving for summary judgment). In explanation for the statement in the Recap about the balances owed to CTSI, CTSI represents that there should be no mystery "to anyone who looks at the recap why CTSI would bill for the whole project" considering that there were already "no less than 5 invoices with substantial outstanding past due balances for which payments had not been made" when the Recap is dated. *Id.* To the contrary, however, it is mysterious how CTSI could include money it claims it is owed for work that had not yet been performed and have that amount documented on a form that was prepared prior to the date when the work was allegedly performed.

It is not the role of the Court to resolve what appears to be a conflict about when supplies or work was last provided by CTSI at the project. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, at this point, the Court must only "determine whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* If the evidence can be construed as favoring Safeco's argu-

ment, the Court must accept it in that manner. *See id.* at 255, 106 S.Ct. 2505 ("all justifiable inferences are to be drawn [in the non-movant's] favor."). Because the Recap, dated June 8, 2000, which states the total amount due and owing, could be interpreted as indicating that CTSI had completed its work on the project prior to June 16 as represented in Mr. Corbett's affidavit, the Court concludes that there exists a genuine issue of material fact and that summary judgment is not appropriate at this time.[7] *See United States of America, for the Use of Greenwald–Supon, Inc. v. Gramercy Contractors, Inc.*, 433 F.Supp. 156, 162 (S.D.N.Y. 1977) (denying defendant's motion for summary judgment where there was a genuine issue regarding the date on which plaintiff last performed work on the project).[8]

In addition, aside from the actual date on which labor was last performed on the project, the Court finds there is a genuine issue of material fact regarding whether the work performed was of the type that would toll the statute of limitations under the Miller Act. *See United States of America, for the Use and Benefit of Interstate Mechanical Contractors, Inc. v. International Fidelity Ins. Co.*, 200 F.3d 456, 460 (6th Cir.2000) (holding that the "majority of circuits ... have held that remedial or corrective work or materials, or inspection of work already completed falls outside the meaning of 'labor' or 'materials' under § 270b(b). Hence, performing such work or supplying such materials will not toll

---

7. Although CTSI notes in its reply at page four that the documents submitted by Safeco indicate that work on the project continued between May 1, 2000, to July 31, 2000, these documents do not establish the date on which CTSI last performed *its* work on the project.

8. The Court is aware that even using the June 8, 2000 date as the date that the last work on the project was performed, it is possible that

this action was still timely filed because CTSI filed suit on June 6, 2001. However, there is no evidence in the record that establishes that June 8, 2000, was the date; in fact, the date may have been much earlier. The Recap merely evidences that this issue remains disputed and needs to be resolved definitely before this Court can render its judgment.

the Miller Act's one-year statute of limitations.") (citations omitted); *Lank Woodwork*, 452 F.Supp. at 924 (holding that for purposes of the one year limitation for filing suit pursuant to the Miller Act, the last work performed must be "part of the original contract" and not "furnished merely for the purpose of correcting defects, or making repairs following inspection of the project.") (internal citations and quotation marks omitted); *Greenwald–Supon, Inc.*, 433 F.Supp. at 162 (holding that whether plaintiff last performed work within Miller Act's statutory limits was "an issue of fact which can only be resolved at trial."). On this point, Mr. Corbett attaches to his affidavit a copy of CTSI employee Bob Garrison's time cards indicating that he worked four hours on June 7, 2000, and one hour on June 16, 2000. *See* Corbett Aff. Ex. 2. However, there is no indication whether the work performed was part of the original contract, as compared to inspection of that work or remedial work performed on work that had already been completed. *See* Corbett Aff. ¶ 9 ("The last day CTSI provided labor or material for the Building 61 Renovation Project was June 16, 2000."). If it was indeed one of the latter situations, CTSI may have failed to timely file this action and is therefore precluded from pursuing this action. Thus, CTSI's statement in its reply that "Bottom Line, THE LABOR WAS PROVIDED TO THE PROJECT" is alone not sufficient to establish that a genuine issue of material fact does not exist on the subject.

## C. *Conclusion*

The Court is extremely sensitive to the fact that this matter has been pending for some time and that discovery has been held in abeyance pending resolution of the defendant's oral request for a stay and the plaintiff's motion for summary judgment. The Court will, therefore, limit the time for the completion of discovery because, as plaintiff notes, defendant had already began its investigation of this claim as is evidenced by the correspondence between the parties. Accordingly, the Court will grant the parties until April 11, 2003, to conduct discovery in this matter.[9]

An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on plaintiff's motion for summary judgment [# 16]. For the reasons stated in the Memorandum Opinion that accompanies this order, plaintiff's motion is **DENIED**.[10] It is further

**ORDERED** that the parties shall be granted until April 11, 2003, to conduct discovery in this matter.

---

9. Although the Court only addressed Safeco's argument that a genuine issue of material fact exists regarding the date on which CTSI last performed work on the project, this opinion does not resolve whether or not the other issues that Safeco raises also preclude the issuance of summary judgment. Indeed, it seems to the Court that several of the issues raised by Safeco warrant further investigation and therefore the Court believes discovery will aid the parties and the Court in clarifying the additional issues that have been raised by Safeco.

10. Both parties are invited by the Court to refile any dispositive motion after they have engaged in discovery, supported by sufficient documentation and resolving definitively the issues that have been raised by the Court and in Safeco's pleading.